■ DANIEL M. VINNIK et al., Appellants, v 795 FIFTH AVENUE CORPORATION et al., Respondents. — Order, Supreme Court, New York County (Charles Whitman, Jr., J.), entered July 31, 1982, which granted the motion of defendants-respondents to dismiss the complaint, unanimously reversed, on the law, and the motion denied, without costs. The 795 Fifth Avenue Corporation (FAC) was created as a co-operative housing corporation in 1958 to acquire the Hotel Pierre (Pierre) so that FAC's stockholders could have the Pierre's "rooms and suites available * * * for residential purposes". Notwithstanding the stated private residential purpose, from the time FAC made the purchase the Pierre has been operated just like any other first-class hotel, which seeks to solicit as much public business as possible in order to maximize profits. Rooms are rented on a daily basis to transient guests and commercial space, like restaurants, banquet facilities, meeting rooms, ballrooms and shops, is continually being leased to interested members of the general public. FAC stockholders, who may be in residence, are treated no differently than any other guest, and they share the same housekeeping services, elevators, lobbies, hallways, restaurants, shops and entrances. Plaintiffs Daniel M. Vinnik and Dale A. Jenkins are stockholders in FAC. In 1977, these plaintiffs purchased 53 rooms in the Pierre. They hold these rooms pursuant to the standard proprietary lease given to any FAC stockholder who owns a room. Vinnik and Jenkins sublet these rooms on a regular basis to the management of the Pierre, who, in turn, rent them to the hotel's transient guests, and pay plaintiffs for the use of the rooms. Rarely did the plaintiffs use the rooms as lodgings. They view their ownership of these rooms as an investment. Subletting rooms to the management is not confined to plaintiffs since other stockholders also sublet their rooms. In November, 1980, plaintiffs entered into a contract to sell to John Danilovich (Danilovich) their co-operative stock in FAC, together with the proprietary leases to their 53 rooms, for $13,000,000. Danilovich is more interested in those rooms as an investment than as a place to live. Despite Danilovich furnishing substantial information in support of his good character and satisfactory financial standing to FAC's board of directors, they have refused to take a vote on the sale. This stalemate resulted in plaintiffs commencing legal action against FAC and its board of directors, upon the theory that the defendants have allegedly acted arbitrarily and in bad faith. The plaintiffs seek, *inter alia,* an injunction directing the defendants to approve the sale of their shares and proprietary leases to Danilovich, in order that plaintiffs can realize a substantial profit on their investment in the Pierre. Defendants moved to dismiss the action. Special Term granted defendants' motion on the basis that as "a cooperative housing corporation, in the absence of statutory violations, [it] may [arbitrarily] restrict the transfer of shares in the cooperative building (see *Weisner v 791 Park Avenue,* 6 N Y 2d 426)". We disagree with Special Term's finding that the case of *Weisner v 791 Park Ave. (supra),* justifies summary disposition of this matter. A comparison of the facts herein with the facts in *Weisner* leads us to the inescapable conclusion that the co-operative housing corporation herein bears no resemblance to the one in *Weisner.* Unlike the stockholders in *Weisner,* whose primary objective, as stated in *Weisner* (p 434), is to decide as "owners of the co-operative apartment house * * * with whom they wish to share their elevators,

their common halls and facilities * * * and their homes", the stockholders in FAC have a dual objective of providing residences and profitably running a public hotel. Our examination of the certificate of incorporation, the by-laws, the proprietary lease and the Hotel Pierre house rules reveals a relationship so complex between FAC and its stockholders that a trial is mandated because at least "several factual questions are raised. Summary judgment, drastic remedy that it is, should not be granted where, as here, material questions of fact exist" (*Village of Chatham v Board of Fire Comrs. of Delmar Fire Dist.*, 90 AD2d 860, 861). Some of these questions are: (1) is FAC a co-operative commercial corporation or a co-operative housing corporation?; (2) is the board of FAC acting in good faith?; (3) is good faith required?; and, (4) if FAC is found to be a co-operative commercial corporation, is it then so far removed from the concept of a co-operative housing corporation that restrictions on the transfer of stock may be invalid? Concur — Kupferman, J. P., Ross, Carro, Asch and Silverman, JJ.