Four Seasons Hotels Ltd. et al., Respondents, v Daniel M. Vinnik et al., Appellants.

First Department, April 28, 1987

## APPEARANCES OF COUNSEL

*Robert P. Stein* of counsel *(Scheffler Karlinsky & Stein,* attorneys), for respondents.

*Dale A. Schreiber* of counsel *(Schwartz Kling & Schreiber, P. C.,* attorneys), for Dale A. Jenkins, appellant.

*Paul M. Lewittes* of counsel *(Vinnik & Auerbach,* attorneys), for Daniel M. Vinnik, appellant.

### OPINION OF THE COURT

WALLACH, J.

On a motion pursuant to CPLR 3211 (a) (7), the question immediately before the court is whether the complaint on its face is sufficient to state a cause of action. The court does, however, have the discretion under CPLR 3211 (c) to go behind the face of the complaint by treating the motion as though it were one for summary judgment. This raises the possibility of summary judgment being granted to either side prior to joinder of issue—but not before the court first gives notice of its intention to so treat the motion. Such notice must come directly from the court, and should advise as to the issues the court deems dispositive of the action.

In dispute is whether the parties entered into a contract. Plaintiff Four Seasons Hotels Ltd. (Four Seasons) is a foreign corporation in the business of hotel management. Joined as a coplaintiff and appearing through the same attorney, but silent on the motion, is Four Seasons' wholly owned subsidiary and assignee, Two East 61st Street Corporation, a New York corporation. It appears from the complaint, as amplified by the affidavits and documents plaintiffs submitted on the motion, that luxury hotels are frequently under lease to professional hotel managers. In January 1980, Four Seasons, desi-

rous of becoming the manager of the Pierre Hotel in New York City, entered into lease negotiations with its owner, a cooperative housing corporation known as 795 Fifth Avenue Corporation (795). At this time, the Pierre was being managed by Trust House Forte (Pierre) Management Inc. (THF), whose lease with 795 was expiring.

795 controls not only the common areas of the Pierre, but also 251 of the approximately 330 rooms. The balance of the rooms are controlled by various of 795's shareholders with appurtenant proprietary leases. Two such shareholders, defendants Vinnik and Jenkins, at relevant times owned 53 rooms constituting some of the most desirable suites in the Pierre. Historically, these rooms were leased to whoever was the manager of the Pierre, and it was important to Four Seasons that most of them be included in any deal. Accordingly, Four Seasons, through its then chairman and president, Mr. Sharp, made contact with Vinnik and Jenkins, and entered into negotiations with them for a lease of their rooms at the same time it was negotiating with 795 for a lease of its rooms. At all times, Vinnik and Jenkins have acted as though they owned the rooms jointly and were otherwise united in interest.

From the outset, Vinnik made clear to Sharp that he and Jenkins wanted to lease their rooms to whoever was the Pierre's manager, and that as between THF remaining the manager and Four Seasons taking over, they had no preference. The negotiations took various twists and turns, with Vinnik supplying financial data showing that a fair return on his and Jenkins' investment in 47 of their rooms would be $490,000 a year, and advising Sharp all the while that he and Jenkins were not satisfied with their then current lease with THF providing for a rental of only $170,000 a year. When Vinnik informed Sharp that he had reached an "agreement in principle" with THF to increase the rent to $450,000 a year, with additional annual increases of 60% of any annual increase in the Consumer Price Index, Four Seasons immediately offered to do the same. Vinnik then invited Four Seasons to submit a written proposal.

The proposal came in the form of a letter from Sharp to Vinnik, dated March 10, 1980. Sharp first indicated therein that Vinnik had in recent telephone conversations requested from Four Seasons a "proposal" for the leasing of the suites owned by Vinnik and Jenkins; that Vinnik had represented to Four Seasons that he and Jenkins owned 15 suites comprising

47 rooms for which THF was then paying a rental of $170,000 a year but offering to pay $450,000 a year with annual increases of 60% of the increase in the Consumer Price Index for urban wage earners and clerical workers; and that Four Seasons was then submitting a revised proposal to 795 in its ongoing negotiations with it to become the manager of the Pierre. The letter then stated that if Vinnik's representations concerning the offer he had received from THF was verified by "satisfactory evidence", and that if Four Seasons' revised proposal was accepted by 795 substantially as submitted, then

"we would agree to enter into a lease of the Suites with you at a rental structured so that in one form or another, as compared with the rental structure you have today, you will effectively receive $450,000 annually to be increased according to the C.P.I. We also will assume the payment of all other operating and maintenance costs * * * The remaining terms and conditions of our lease with you for the Suites would be finalized after completion of our negotiations with 795 Fifth Avenue Corporation so that to the greatest extent possible the leases would be consistent with each other * * *

"If you are in agreement with the proposals set out above, kindly sign the enclosed copy of this letter in the space indicated and return same to us."

Vinnik signed the letter on behalf of himself and Jenkins in the space indicated, a signature line above which were typed the words "Accepted and Agreed"; at about the same time, he entered into a similar agreement with THF. However, when Four Seasons was awarded the Pierre contract, Vinnik and Jenkins refused to lease their rooms to it, and, subsequently, in November 1980, they sold the rooms to a nonparty subject to any judicial determination holding them liable to Four Seasons under the March 10 letter.

The issue in dispute is whether the letter of March 10, 1980 is a contract. Defendants Vinnik and Jenkins contend that it was merely a "preliminary proposal" for further negotiations, or a "skeletal outline" of a suggested agreement, "neither binding nor enforceable", and that as much is apparent upon the face of the writing itself, it being so incomplete and indefinite, and barren of the terms usually found in a garden variety lease not to mention one worth many millions of dollars. In particular, defendants point to the omission of "such crucial provisions" as the specific space demised, term, security, commencement date, cancellation, assignability, and

method of payment. Against this, plaintiffs assert that the "cornerstone" of Four Seasons' agreement with defendants was the amount of annual rent, and that the parties did not contemplate close bargaining over any other aspect of their relationship. While acknowledging that a formal lease was contemplated, plaintiffs argue that, except for the annual rent and operating costs, the parties intended that the terms thereof were to "parallel the structure" of Four Seasons' hoped for lease with 795, and that once the 795/Four Seasons lease came into being the entire transaction could have been readily "finalized" within the meaning of the letter given good faith and reasonableness on defendants' part. To show that this was in fact what the parties intended, plaintiffs point to various acts and utterances by defendants after March 10, 1980 evincing, they say, an understanding of the March 10 letter as binding. In particular, plaintiffs point to defendants' membership on 795's board of directors, and the accusation made by some of the other directors that defendants could not be objective in the selection of a new manager. According to Four Seasons, and the minutes of 795's board meetings, introduced by the affidavit of 795's then president and chairman, Mr. Bienenstock, Vinnik and Jenkins denied any conflict of interest by representing to 795's board that they had made similar agreements to lease their rooms with THF and Four Seasons alike, and that it consequently did not matter to them which of the two was awarded the Pierre contract. As another manifestation of defendants' understanding of the March 10 letter as a binding contract, plaintiffs emphasize that the sale of defendants' apartments to an outsider was made subject to Four Seasons' rights under the letter.

The action seeks specific performance on the theory that the March 10 letter is a contract to enter into a lease. Defendants moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint on the ground that the letter is not such a contract. The only evidentiary material submitted in support of this motion was a copy of the March 10 letter itself which, for some reason, was not annexed to the complaint. Defendants' argument, as recapitulated in their brief on appeal, was that the letter was so lacking in detail as to demonstrate, on its face, notwithstanding plaintiffs' conclusory allegations to the contrary, that the parties did not intend to be bound by it. In response, plaintiffs cross-moved for an order "pursuant to CPLR 3211 (c), granting partial summary judgment declaring the validity of a certain agreement dated March 10, 1980". Submitting affidavits from

Sharp, Bienenstock, and their attorney, plaintiffs purported to show that, given the parties' situation, the objectives they were striving to attain, and their other acts and utterances, there could be no issue as to their intent to be bound by the March 10 letter. Although defendants had originally eschewed reliance on evidentiary material other than the letter itself, their reply, consisting of an affidavit from defendant Vinnik "submitted in support of defendants' motion to dismiss pursuant to CPLR 3211 (a) (7) and in opposition to plaintiffs' cross-motion for partial summary judgment pursuant to CPLR 3211 (c)", drew attention to one of the documents submitted by plaintiffs in support of the cross motion, to wit, a provision in the lease Four Seasons entered into with 795 limiting the amount of rent Four Seasons could pay individual "Suite Owners". Vinnik's affidavit purported to show that as applied to him and Jenkins this provision would have limited their rent to a paltry $149,800; he then opined that such demonstrates that it was Four Seasons' understanding that the March 10 letter, providing for a rental of $450,000, was not to be binding. In surreply papers, Sharp and Bienenstock represented that the rent limitation clause of the 795/Four Seasons lease was not intended to apply to Vinnik and Jenkins.

Special Term defined the issue to be "whether the agreement is definite enough in its terms to be a valid contract". Holding that it is, Special Term found that the parties intended "to glean terms such as commencement date, termination, rights of cancellation and assignment directly from the 795 lease." Concerning the rent limitation provision of that lease, it was enough for Special Term that 795's chairman represented that it was not intended to apply to defendants' lease with Four Seasons. Special Term ordered that defendants' motion to dismiss the complaint be denied, and that plaintiffs' "cross-motion for summary judgment declaring the agreement valid [be] granted."

Defendants appealed, arguing that the complaint fails to state a cause of action; that summary judgment is unavailable to a pleader prior to joinder of issue on his pleading; that if summary judgment is so available to a pleader, it should not have been granted here without notice first being given as required by CPLR 3211 (c); that if such notice had been given, defendants would have shown the existence of numerous issues of fact requiring a trial; and that since the action was brought for specific performance, not a declaratory judgment, Special Term erred in purporting to declare the March 10

letter to be an enforceable contract. Defendants also moved before Special Term for an order "pursuant to CPLR 2221 and 5015 vacating [its prior] decision and order insofar as such decision and order granted plaintiffs' cross-motion". Arguing in support thereof that plaintiffs' cross motion was premature prior to joinder of issue, and, if not premature, that notice pursuant to CPLR 3211 (c) should have been given, defendants purported to offer proof that was available to them at the time of the original motion but deliberately withheld on the understanding that it was of no consequence until CPLR 3211 (c) notice had been given by the court. This motion was deemed by Special Term to be one for renewal, and denied as "bottomed on information that was before the Court" on the original motion. As to CPLR 3211 (c) notice, the court stated that defendants were not entitled to any since "plaintiff's cross-moving papers were clearly designated as a motion for summary judgment and defendants' opposition papers showed that defendant *[sic]* was fully apprised of same", citing *O'Hara v Del Bello* (47 NY2d 363) and *Shapiro v Prudential Ins. Co.* (81 AD2d 661). The denial of this motion was also appealed by defendants.

There can be no contract absent a mutual intent to be bound *(Martin Delicatessen v Schumacher,* 52 NY2d 105, 109). Whether such intent exists is a mixed question of law and fact. This means that the question is to be decided by the court if determinable from the language employed in the written instrument, and if not so determinable—if resort must be had to disputed evidence or inferences outside the written words of the instrument—then by the finder of the facts *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291). The idea has been expressed in various ways: " 'While the construction of writings is, to be sure, matter of law in the sense that it is an affair for a judge, still the particulars of the process of ascertaining the disclosed intention of a writer are for the most part items of fact.' " *(Hart v Socony-Vacuum Oil Co.,* 291 NY 13, 18, quoting *Matter of City of New York [Vernon Parkway],* 285 NY 326, 331.) " 'It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used, in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it,

the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact' " *(Lachs v Fidelity & Cas. Co.,* 306 NY 357, 364, quoting *Kenyon v Knights Templar & Masonic Mut. Aid Assn.,* 122 NY 247, 254).

In determining whether the parties intended to enter into a contract, an objective test is generally to be applied. "This means that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling, for a contract is an obligation attached, by the mere force of law, to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." (21 NY Jur 2d, Contracts, § 29.) In considering these manifestations of intent, the fact finder should not put disproportionate emphasis on any single act, phrase or other expression but, instead, on the totality of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain *(Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, 399-400).

Relevant on any inquiry concerning contractual intent are signed writings. Sometimes a writing unequivocally manifests the parties' intent to form a binding contract; at other times its sense shows only an intent to continue negotiations. A writing can also indicate that the parties have, in piecemeal fashion, reached agreement on some terms but not on others, in which case there is a contract if the matters left open were not deemed material by the parties, and there is not a contract if the matters left open were deemed material. Definiteness is essential *(Martin Delicatessen v Schumacher, supra),* but only as to material terms. A contract does not necessarily lack all effect merely because it expresses the idea that something is left to future agreement *(May Metro. Corp. v May Oil Burner Corp.,* 290 NY 260, 264; *Sanders v Pottlitzer Bros. Fruit Co.,* 144 NY 209, 213-214). Should the fact finder find that " 'the parties have completed their negotiations of what they regard as essential elements, and performance has begun on the good faith understanding that agreement on the unsettled matters will follow, the court will find and enforce a contract even though the parties have expressly left these other elements for future negotiation and agreement, if some objective method of determination is available, independent of either party's mere wish or desire. Such objective criteria may be found in the agreement itself, commercial practice or other usage and custom. If the contract can be rendered certain and

complete, by reference to something certain, the court will fill in the gaps' " *(Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069, 1070-1071, quoting Fein, J., at Trial Term 75 Misc 2d 418, 422). The writing, other writings, usage and custom, the parties' situation, objectives, acts and utterances—a wide array of facts and circumstances can be relevant, and is admissible *(see,* Richardson, Evidence §§ 614, 625-627, 604 [Prince 10th ed]), in deciding whether gaps in a purported agreement are material, and, if not, how they should be filled in.

The question of contractual intent being essentially factual in nature, proof bearing thereon should not be considered by the court prior to joinder of issue unless, a CPLR 3211 (a) motion having been made, the court gives notice of its intention to give the case summary judgment treatment (CPLR 3212 [a]; 3211 [c]). Absent such notice, the proofs should be put aside and the pleader's allegations of fact given their most favorable intendment *(Arrington v New York Times Co.,* 55 NY2d 433, 442). In a contract action, this means that any prejoinder construction of an alleged contract must be done in light of the facts as alleged in the complaint. Whether there is actually any evidentiary support for such allegations is a question that must await the "more embracive and exploratory" motion for summary judgment *(Rovello v Orofino Realty Co.,* 40 NY2d 633, 634).

This does not mean that, absent CPLR 3211 (c) notice, the court is obliged to accept at face value every conclusory, patently unsupportable assertion of fact found in a pleading or other materials submitted by a pleader on a motion to dismiss. Documentary evidence, proved or conceded to be authentic, may be considered by the court for fact-finding purposes prior to joinder of issue without CPLR 3211 (c) notice first being given (CPLR 3211 [a] [1]; *American Indus. Contr. Co. v Travelers Indem. Co.,* 42 NY2d 1041, 1043; *see, 805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447).

The question raised on defendants' motion to dismiss was whether an inference of an intent to be bound could be drawn from any reasonable reading of the March 10 letter construed in light of the facts as alleged in the complaint. If yes, the motion to dismiss should have been denied with no further action taken by the court; if no, the motion should have been granted with the only further action taken by the court being to decide whether "good ground" existed to support a cause of action, i.e., whether leave to replead should be granted (CPLR 3211 [e]). For this "limited purpose only", it would have been

proper for the court to consider, without giving notice, affidavits and other evidentiary material the parties elected to submit on the motion, giving plaintiffs' submissions every possible favorable intendment *(Rovello v Orofino Realty Co., supra,* at 635-636; *accord, Guggenheimer v Ginzburg,* 43 NY2d 268; *but see,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3211.36, n 260). To have gone further, however, to have considered such material for the purpose of deciding whether issues of fact existed warranting a trial, would have required CPLR 3211 (c) notice. This is because the "good ground" inquiry of CPLR 3211 (e), undertaken only for the limited purpose of deciding whether leave to replead should be granted, does not entail as stringent a standard of proof as the more embracive summary judgment motion *(Cushman & Wakefield v John David, Inc.,* 25 AD2d 133), and thus, there is less of an incentive to lay bare one's proof and make a record. This lack of incentive can hold true as much for the party pleaded against as for the pleader. By granting plaintiffs summary judgment, the court precluded defendants from adducing facts in their answer controverting those alleged in the complaint and from otherwise making a record showing that there was no intent to be bound by the March 10 letter. Notwithstanding plaintiffs' purported cross motion pursuant to CPLR 3211 (c), defendants were entitled to assume, unless otherwise notified by the court, that the focus of inquiry was on the pleading of the action and not its merits, and would remain so until joinder of issue *(see, People v New York City Tr. Auth.,* 59 NY2d 343, 348).

The discretion conferred by CPLR 3211 (c) to review the merits of a poorly pleaded case at an early stage of the proceedings should be freely exercised by the court and exploited as an effective calendar control device, a poorly pleaded case, not unlike an abandoned one, being suspect on the merits. Such discretion may be exercised even in the absence of a request for CPLR 3211 (c) treatment by a party *(see,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3211.44). It is the making of a motion pursuant to CPLR 3211 (a), not the making of a request pursuant to CPLR 3211 (c), that opens the door to the possibility of summary judgment treatment prior to joinder of issue. However, since a summary judgment motion searches the record, it is conceivable that a CPLR 3211 (c) conversion could result in a judgment for the pleader *(ibid.).* CPLR 3211 (c) treatment can avail, and be requested by, the pleader as well as the party pleaded against, provided

there is, as here, a motion to dismiss that the court, on notice, can convert. It was because no such motion to dismiss was made in *City of Rochester v Chiarella* (65 NY2d 92), relied upon by defendants for the proposition that summary judgment is in all events simply unavailable to a pleader prior to joinder of issue on his pleading, that a summary judgment motion by the pleader in that case was held to be premature.

■ Special Term erred not because summary judgment is unavailable to a pleader prior to joinder of issue, but because summary judgment is unavailable to either side prior to joinder of issue absent CPLR 3211 (c) notice. Such notice must come directly from the court and should fairly advise as to the issues it deems dispositive of the action. We respectfully disagree with Second Department authority holding that notice of CPLR 3211 (c) treatment need not necessarily be given by the court when such treatment is requested by one of the parties, i.e., that the request itself can constitute the "adequate notice" required by the statute *(Reed v Shoratlantic Dev. Co.,* 121 AD2d 525). The parties, of course, are free to submit whatever evidentiary material they desire on a CPLR 3211 (a) motion (CPLR 3211 [c]; *Rovello v Orofino Realty Co., supra,* at 635). They do so, however, without any assurance that the court will, in its discretion, consider it as it would on a CPLR 3212 motion. Unless the court gives express notice of its intention to do so, either party should be able to rest assured that, no matter the quantity or quality of the nondocumentary evidentiary material submitted by the other party, there will be no fact finding or framing of factual issues for trial on a CPLR 3211 (a) (7) motion *(Rovello v Orofino Realty Co., supra; People v New York City Tr. Auth., supra).*

There are, however, three exceptions to the requirement of notice. If the action involves no issues of fact, but only issues of law fully appreciated and argued by both sides, it is proper for the court to grant summary judgment to either side without first giving notice of its intention to do so. Such is ofttimes the case in declaratory judgment actions involving an issue of statutory construction *(e.g., O'Hara v Del Bello,* 47 NY2d 363; *see, Rich v Lefkovits,* 56 NY2d 276, 283). The second exception is when a request for CPLR 3211 (c) treatment is specifically made by both sides *(Wein v City of New York,* 36 NY2d 610, 620-621); the third when both sides make it unequivocally clear that they are laying bare their proof and deliberately charting a summary judgment course *(Monteferrante v New York City Fire Dept.,* 63 AD2d 576, *affd for*

*reasons stated* 47 NY2d 737; *compare, I.J.E. Constr. Corp. v Dollar Fed. Sav. & Loan Assn.,* 92 AD2d 525).

This last exception was not the case here. Defendant Vinnik's affidavit, the thrust of which could just as well have been delivered by an attorney, was simply to the effect that the rent limitation clause of the 795/Four Seasons lease was so inconsistent with the March 10 letter, providing for rent of $450,000 a year, as to be sufficient by itself to raise an issue of fact as to whether Four Seasons itself viewed the letter as a binding commitment, and that plaintiffs' request for summary judgment treatment should therefore be rejected and the matter decided instead on the pleadings. Indeed, on oral argument before Special Term, defendants' attorney, responding to an argument by his adversary that Vinnik's reply affidavit did not address the proof plaintiffs adduced on their cross motion concerning defendants' representations to 795's board, explained that "there are assertions of fact contained in [plaintiffs'] papers which we have not chosen to dispute. We have not chosen to address those issues of fact, because we think the motion for summary judgment is premature and that we are addressing the motion to the face of the complaint. It is fair to say that after answer, and if this case goes forward, there will be plenty to say about many of those things." No more than this need have been done by defendants to dispel any thought that they were laying bare their proof. The best way of making sure that CPLR 3211 (c) notice is given by the court is to request it.

Turning to defendants' motion to dismiss pursuant to CPLR 3211 (a) (7), the March 10 letter cannot be condemned as an agreement to agree simply because it does not contain most of the terms usually found in a formal lease *(1130 President St. Corp. v Bolton Realty Corp.,* 300 NY 63, 68). Rather, to be enforceable as a contract, the letter need contain only the terms deemed material by the parties to their bargain. From a mere inspection of the letter, it cannot be said as a matter of law that anything material was left open to be agreed upon thereafter. The method of payment, for example, was apparently of no concern to the parties, for this was to be worked out "in one form or another". And it does not unduly strain the ordinary significance of the word "finalize", given its context, to say that it indicates that negotiations on matters of substance had been completed, and that all that remained to be done was to prepare a formal lease consistent with the 795/Four Seasons lease to be entered into should Four Sea-

sons be awarded the Pierre contract. Defendants, characterizing the 53-page 795/Four Seasons lease as being of the "utmost complexity", contend that its detailed terms are peculiar to the relationship between 795 and Four Seasons, that it cannot be mechanically applied to fix the terms of defendants' own relationship with Four Seasons, and that the idea of consistency between the two leases expressed in the letter is so indefinite and unworkable as to make the letter "unenforceable on its face" as a contract. Yet, defendants evidently thought themselves bound in some manner; otherwise why would they have signed the letter so as to indicate that it was "Accepted and Agreed" (see, N.E.D. Holding Co. v McKinley, 246 NY 40, 44). Plaintiffs contend that defendants manifested their assent in this way because, in point of fact, the only provision of the contemplated lease of any real importance to them was the annual rent. To have both Four Seasons and THF locked into identical leases represented something of value to defendants since, as members of 795's board, it was necessary that they appear neutral as between Four Seasons and THF lest other members of the board accuse them of a conflict of interest and deny them a vote in the selection of the Pierre's manager. And, from Four Seasons' point of view, it was of primary importance that defendants be neutral in fact as well as in appearance; towards that end, it made its proposal conditional upon defendants' presentation of "satisfactory evidence" of THF's offer to increase the rent to $450,000.

■ What the parties meant when they said that the "remaining" terms of the lease were to be "finalized" so as to be "consistent" with the 795/Four Seasons lease "to the greatest extent possible" is essentially an issue of fact that, as defendants put it, "cannot be resolved in a vacuum" but must await joinder of issue and proof of any relevant extrinsic circumstances. And, to the extent consistency with the 795/Four Seasons lease should prove not possible, there appears to be no reason why recourse to custom and reason cannot be had. As to matters not material, the parties accept by implication the test of the reasonable or customary if no other is available (N.E.D. Holding Co. v McKinley, supra, at 45). Oral proof of custom and usage would not necessarily be inadmissible as varying the letter, and may, together with the parties' whole course of dealing, be considered in determining what the letter means (supra; May Metro. Corp. v May Oil Burner Corp., 290 NY 260, 265, supra; Richardson, Evidence, op. cit.).

■ Proof of facts extrinsic to the March 10 letter should be taken after joinder of issue, and submitted to the fact finder if susceptible of differing inferences on the question of whether the parties intended to be bound thereby *(see, e.g., Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, *supra; Metro-Goldwyn-Mayer v Scheider,* 40 NY2d 1069, *supra; Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410; *Mesibov, Glinert & Levy v Cohen Bros. Mfg. Co.,* 245 NY 305; *Saltzman v Barson,* 239 NY 332), or taken from the fact finder, and determined by the court as a matter of law, if not so susceptible *(see, e.g., Brause v Goldman,* 10 AD2d 328, *affd* 9 NY2d 620; *Willmott v Giarraputo,* 5 NY2d 250; *Schwartz v Greenberg,* 304 NY 250; *1130 President St. Corp. v Bolton Realty Corp.,* 300 NY 63; *Newburger v American Sur. Co.,* 242 NY 134; *St. Regis Paper Co. v Hubbs & Hastings Paper Co.,* 235 NY 30; *Arliss v Brenon Film Corp.,* 230 NY 390). The point is that the letter of March 10, construed in light of the facts as alleged in the complaint, is not so indefinite as to raise an inference of nonfinality so certain as to render the complaint dismissable prior to joinder of issue (compare cases granting a motion to dismiss prior to joinder of issue when intent to be bound is in issue, *e.g., Sun Print. & Publ. Assn. v Remington Paper & Power Co.,* 235 NY 338; *Scheck v Francis,* 26 NY2d 466; *Ansorge v Kane,* 244 NY 395, with cases denying such a motion, *e.g., N.E.D. Holding Co. v McKinley,* 246 NY 40, *supra; May Metro. Corp. v May Oil Burner Corp.,* 290 NY 260, *supra).* The complaint states a cause of action for breach of contract if not specific performance. Defendants' motion to dismiss for failure to state a cause of action was properly denied.

Although defendants' motion did not notice CPLR 3211 (a) (5) as a ground for dismissal, we have reviewed their argument that the action is barred by the Statute of Frauds, and find it without merit. The point appears merely to repeat the argument that the letter of March 10 is incomplete as to material terms.

Accordingly, the order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered April 28, 1986, which denied defendants' motion for an order pursuant to CPLR 3211 (a) (7) dismissing the action and granted plaintiffs' cross motion for summary judgment pursuant to CPLR 3211 (c), should be modified, on the law, to deny the cross motion, and otherwise affirmed, without costs. Defendants' appeal from the

order of the same court, entered October 15, 1986, which denied their motion for an order vacating the order entered on April 28, 1986 insofar as it granted plaintiffs' cross motion, should be dismissed as moot, without costs.

KUPFERMAN, J. P. (dissenting). I would affirm for the reasons stated at Special Term.

We are familiar with the background of this matter involving the operation of the Pierre Hotel, a cooperative housing corporation. *(See, Vinnik v 795 Fifth Ave. Corp.,* 94 AD2d 685, *affd* 62 NY2d 698.)

I see no great need to differ with the Second Department on the question of whether there must be notice by the court to obtain CPLR 3211 (c) treatment. *(See, Reed v Shoratlantic Dev. Co.,* 121 AD2d 525.) Notice by one of the parties should be sufficient. There should be uniformity in the approach to this procedural matter to avoid confusion at the Bar. Moreover, it would also seem that the Second Department has a better view of this aspect.

CARRO, KASSAL and ELLERIN, JJ., concur with WALLACH, J.; KUPFERMAN, J. P., dissents in an opinion.

Order, Supreme Court, New York County, entered on April 28, 1986, modified, on the law, to deny plaintiffs' cross motion for summary judgment, and otherwise affirmed, without costs and without disbursements. The appeal from the order entered on October 15, 1986 be, and the same hereby is, unanimously dismissed, without costs and without disbursement.