RONAN ASSOCIATES, INC.,
Petitioner–Appellant,

v.

LOCAL 94–94A–94B, INTERNATIONAL
UNION OF OPERATING ENGINEERS,
AFL–CIO, Respondent–Appellee.

No. 1194, Docket 93–7948.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1994.

Decided May 18, 1994.

Irwin Rochman, New York City (Rochman Platzer Fallick Rosmarin & Sternheim, on the brief), for petitioner-appellant.

Stanley Q. Casey, Garden City, NY (Kennedy & Casey, on the brief), for respondent-appellee.

Before: KEARSE and LEVAL, Circuit Judges, and GLASSER, District Judge *.

KEARSE, Circuit Judge:

Petitioner Ronan Associates, Inc. ("Ronan"), appeals from a judgment of the United States District Court for the Southern District of New York, following a bench trial before Lawrence M. McKenna, *Judge*, denying its petition to enjoin an arbitration commenced by respondent Local 94–94A–94B of the International Union of Operating Engineers ("Local 94" or the "Union") for a determination that Ronan wrongfully discharged Local 94 member John Schirripa. Ronan sought to avoid arbitration on the ground that it was not a party to a collective bargaining agreement with the Union. The district court denied the petition, holding that Ronan was required to arbitrate under the doctrine of promissory estoppel. On appeal, Ronan

---

* Honorable I. Leo Glasser, of the United States District Court for the Eastern District of New York, sitting by designation.

contends only that the requirements for application of that doctrine were not met. For the reasons below, we conclude that the judgment should be affirmed on other grounds.

## I. BACKGROUND

The following description of the pertinent events is taken principally from the district court's posttrial findings of fact ("Findings"), which Ronan has not challenged on appeal.

In 1992, Ronan was the managing agent for the owner of a building at 101 Sixth Avenue ("101 Sixth") in New York City. Schirripa, a member of Local 94, was chief engineer at another building where he had been employed for some seven years. In or about February 1992, Schirripa was solicited to become chief engineer at 101 Sixth. Neither 101 Sixth nor Ronan was party to a collective bargaining agreement with Local 94. In the ensuing conversations between Schirripa and Ronan's vice president Thomas McCloskey, Schirripa made it clear that even if he agreed to work at 101 Sixth, he wished to remain a member of Local 94 and to have all of the benefits of the Local 94 collective bargaining agreement.

Though Ronan and 101 Sixth never agreed to enter a collective bargaining agreement with Local 94, Findings at 3, "McCloskey told Mr. Schirripa, in substance, that, as to Mr. Schirripa, Ronan would adhere to the terms of the Local 94 collective bargaining agreement," Findings at 2. Ronan also sent Schirripa a letter stating in part that "[a]ll benefits will be provided through Local 94." (Letter from Thomas A. McCloskey to John Schirripa.) Schirripa testified that he understood Ronan's letter to mean that he was to have "all benefits whatever is in the green book [*i.e.,* the Union collective bargaining agreement] protecting my job security, protecting me from unjust termination, protecting my salary. That's what that—that one sentence, that is what that means to me, all benefits." (Trial Transcript 47.) The district court explicitly credited this testimony, found that Ronan had clearly and unambiguously promised those benefits, and found that Schirripa's understanding was reasonable:

A clear and unambiguous promise was made to Mr. Schirripa that "they would adhere to the contract regarding everything in the contract, vacation, benefits, medical plan, whatever was in the green book [i.e., the contract]." . . . . [I]t is clear that, had he been told by Ronan that he was not to have all of his rights as a member of Local 94 under the Local 94 collective bargaining agreement, he would not have left 575 Lexington Avenue, where he had been employed as chief engineer for some seven years.

Findings at 4–5 (first brackets in Findings).

Schirripa agreed to commence work at 101 Sixth in mid-August 1992. He was discharged in November 1992. He remained unemployed for some four months.

Local 94 initiated an arbitration proceeding against Ronan, contending that the termination of Schirripa's employment violated the collective bargaining agreement. Ronan commenced suit in state court for a stay of arbitration, alleging that it was not party to a collective bargaining agreement with Local 94. The Union, contending that a labor contract was at issue, removed Ronan's action to the district court, invoking 29 U.S.C. § 185 (1988).

The district court, after a bench trial with regard to the question of Ronan's duty to arbitrate, refused to stay the arbitration. Having found the above facts, *inter alia,* the court found that Schirripa had changed his position in reliance on Ronan's representation to him that he would receive the benefits of the Local 94 collective bargaining agreement and that he was injured by that reliance. The court concluded that if Ronan breached its promise—a question to be determined by the arbitrator—Ronan's actions, and Schirripa's consequent injury, were unconscionable, warranting application of the principle of promissory estoppel.

The court noted that though there was no collective bargaining agreement between Ronan and the Union and hence no federal-question jurisdiction under the labor laws, the court had supplemental jurisdiction under 28 U.S.C. § 1367(a) (1988) and saw no reason not to exercise that jurisdiction.

This appeal followed.

## II. DISCUSSION

■ On appeal, Ronan contends that the district court erred in requiring it to arbitrate on the ground of promissory estoppel because Schirripa's reliance on Ronan's promises did not constitute the "unconscionable injury" required by New York cases such as *D & N Boening, Inc. v. Kirsch Beverages, Inc.,* 99 A.D.2d 522, 524, 471 N.Y.S.2d 299, 302 (2d Dep't), *aff'd,* 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984), for application of the promissory-estoppel doctrine. This Court is free to affirm an appealed decision on any ground that finds support in the record, regardless of the ground on which the trial court relied. *See, e.g., Leecan v. Lopes,* 893 F.2d 1434, 1439 (2d Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). We conclude that we need not reach the issue of promissory estoppel, for in light of the district court's unchallenged findings of fact, it is clear that Ronan and Schirripa entered into a contract that required Ronan to submit to arbitration.

■ Under traditional principles of contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are questions of fact; however, the matter of whether or not there was a contract, in light of the factual findings on these questions, is an issue of law. *See generally Four Seasons Hotels, Ltd. v. Vinnik,* 127 A.D.2d 310, 317, 515 N.Y.S.2d 1, 6 (1st Dep't 1987); *Cortland Asbestos Products, Inc. v. J. & K. Plumbing & Heating Co.,* 33 A.D.2d 11, 12, 304 N.Y.S.2d 694, 696 (3d Dep't 1969) ("[W]hile the existence of a contract is a question of fact, the question of whether a certain or undisputed state of facts establishes a contract is one of law for the courts...."). The principal purpose of the law of contracts is "the realization of reasonable expectations that have been induced by the making of a promise," 1 *Corbin on Contracts* § 1.1 at 2 (Joseph M. Perillo, ed., rev. ed. 1993), and if in fact the parties have made promises to each other, and have manifested an intent to enter into a contract, and there has been a meeting of the minds as to the essential terms of the contract, there is a contract as a matter of law, *see, e.g., Four Seasons Hotels, Ltd. v. Vinnik,* 127 A.D.2d at 317, 515 N.Y.S.2d at 6 ("[T]he manifestation of a party's intention rather than the actual or real intention is ordinarily controlling, for a contract is an obligation attached, by the mere force of law, to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent.") (internal quotes omitted).

■ Here, the court found that Ronan offered Schirripa a position and that Schirripa declined to accept that offer unless he would receive the benefits contained in the Local 94 collective bargaining agreement. Ronan then promised Schirripa he would have those benefits, and on the basis of that promise, Schirripa accepted Ronan's offer of employment. Given these unchallenged findings of fact, a contract was formed as a matter of law. Whatever Ronan's undisclosed intention may have been, the terms of that contract included the promise made by Ronan to Schirripa that he would have all the benefits of the Local 94 collective bargaining agreement.

■ The fact that neither Ronan nor 101 Sixth entered into a collective bargaining agreement with Local 94 is not material. Parties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not party.

Since the contract between Schirripa and Ronan included all of the benefits of the Local 94 collective bargaining agreement and one of those benefits was the right to compel arbitration of questions of discharge, we affirm the district court's refusal to stay arbitration.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.