*356 OPINION OF THE COURT
Anthony J. Falanga, J.
There are two motions before the court. The wife moves for an order pursuant to CPLR 2221 granting her leave to renew her motion for partial summary judgment granted by order of this court dated October 24, 2002, reversed by order of the Appellate Division, Second Department, dated March 8, 2004 (5 AD3d 428 [2004]); and upon renewal, granting her partial summary judgment pursuant to CPLR 203 (d) and 3019 (d) dismissing the husband’s second counterclaim. The husband moves for an order (1) dismissing the wife’s application on the grounds of collateral estoppel and res judicata, and on the further grounds that the application is contrary to the parties’ prenuptial agreement and violative of statutory principles and contrary to law; (2) pursuant to 22 NYCRR 130-1.3 imposing financial sanctions against both the wife and her attorney in the sum of $10,000 and costs, by means of a money judgment for legal fees in the sum of $15,000; and (3) pursuant to CPLR 3403 (a) (3) granting an immediate trial preference.
The parties were married on September 17, 1988. There are no children of the marriage. The wife has an emancipated child from a prior marriage, and the husband has two emancipated children from a prior marriage. The wife is 56 and the husband is 59 years old. Prior to the marriage, the husband had obtained a Bachelor’s degree from. Hofstra University and had five works published, to wit: Rivers of Babylon, Cathedral, Talbot Odyssey, Word of Honor and Charm School. Prior to the marriage, the wife had obtained a Bachelor’s and a Master’s degree from Ohio State University.
The parties resided together, prior to their marriage, in a home owned by the husband. They signed a prenuptial agreement, dated September 16, 1988, on September 17, 1988.
The wife commenced an action for divorce by filing a summons with notice on August 5, 2002. The summons sets forth notice that she is seeking a divorce and ancillary financial relief including equitable distribution and maintenance. The summons does not set forth that she has a cause of action to set aside a prenuptial agreement. On August 14, 2002, the wife submitted an order to show cause for pendente lite relief for signature to the undersigned Justice. Said order to show cause directed that it be served on the husband simultaneously with the summons with notice. Said order to show cause set forth ex parte provisions requiring the husband to maintain medical and *357 life insurance for the benefit of the wife and restrained him from disposing of assets except in the ordinary course of business or living pending the determination of the application. The papers submitted by the wife in support of her order to show cause did not make any reference to a prenuptial agreement.
By notice of cross motion dated August 27, 2002, the husband moved for an order dismissing the wife’s pendente application, and vacating the ex parte directives set forth therein, on the ground that the court was without jurisdiction to grant such relief by virtue of the prenuptial agreement dated September 16, 1988. The husband also moved for an assessment of costs of $10,000 and sanctions of $10,000.
On or about August 27, 2002, the wife served an amended summons with notice incorporating the notice set forth in the original summons dated August 5, 2002, and adding notice of a cause of action to set aside the prenuptial agreement dated September 16, 1988. She served a verified complaint dated September 5, 2002, setting forth third and fourth causes of action seeking judgment setting aside said prenuptial agreement.
In her September 10, 2002 reply to the cross motion, the wife asserted, in relevant part, that the prenuptial agreement in issue was the unconscionable product of the husband’s overreaching. By notice of motion, dated September 10, 2002, she moved for partial summary judgment on the third and fourth causes of action set forth in her verified complaint. This notice of motion was Served prior to the service of an answer by the husband in contravention of the CPLR 3212 statutory proscription prohibiting such motions prior to joinder of issue.
The husband served a verified answer with counterclaims dated October 2, 2002. Said answer sets forth eight affirmative defenses with regard to the wife’s third and fourth causes of action seeking judgment setting aside the prenuptial agreement. Said answer also interposes a counterclaim for divorce and a counterclaim seeking judgment directing the specific performance of the prenuptial agreement.
By notice of cross motion dated October 2, 2002, the husband moved for an order denying the wife’s motion for partial summary judgment and for a further order granting him partial summary judgment (1) dismissing the third and fourth causes of action in the wife’s complaint, and (2) declaring the prenuptial agreement dated September 16, 1988 to be valid, enforceable and dispositive of the issues of maintenance and equitable distribution. The husband’s cross motion for summary judg *358 ment on his counterclaim for judgment declaring the validity of the prenuptial agreement was served prior to the service of the wife’s reply to his counterclaims, again in contravention of CPLR 3212. His affidavit, sworn to on October 2, 2002, in support of his cross motion and in opposition to the wife’s notice of motion for partial summary judgment, and his verified answer assert that the wife’s third and fourth causes of action are time-barred by CPLR 213.
The wife served papers, dated October 10, 2002, in opposition to the husband’s notice of cross motion for partial summary judgment, and the husband served a reply to his cross motion dated October 17, 2002. The wife did not serve a reply to the husband’s counterclaims until on or after October 25, 2002. Said reply denies the allegations of the counterclaims and asserts that the wife is unable to form a belief with regard to the authenticity of the prenuptial agreement.
All four of the above-mentioned motions were submitted to the court on October 18, 2002, prior to the service of the wife’s reply to the husband’s counterclaims. The reply was not part of the record considered by this court. Neither party’s papers submitted on said motions address the issue of the CPLR 3212 prematurity of the husband’s cross motion for summary judgment on his second counterclaim. The four motions were decided by an order dated October 24, 2002 wherein the wife was granted summary judgment setting aside the prenuptial agreement dated September 16, 1988 and the husband’s cross motions were denied in all respects.
By order dated November 22, 2002, the Appellate Division stayed all proceedings in the trial court pending the determination of an appeal of the order dated October 24, 2002 filed by the husband. Said order conditioned the stay on the requirement that the husband pay the carrying charges on the marital residence, pay the wife the sum of $5,500 a month, and maintain existing life and medical coverage for her benefit.
By order dated March 8, 2004, the Appellate Division (5 AD3d 428 [2004]) reversed the order dated October 24, 2002, and held that the third and fourth causes of action in the wife’s complaint were dismissed as time-barred.
The wife now moves the court for an order dismissing the husband’s second counterclaim seeking a judgment specifically enforcing the prenuptial agreement dated September 16, 1988. The wife denotes her application as a motion pursuant to CPLR 2221 to renew the husband’s cross motion seeking summary *359 judgment on his second counterclaim, decided by the order of this court dated October 24, 2002. The wife contends that as issue had not been joined on the husband’s second counterclaim as of the date of the submission of said motion, neither this court nor the Appellate Division had the authority to summarily adjudicate said counterclaim, and that the Appellate Division’s order dated March 8, 2004 did not, in fact, summarily determine said counterclaim. She further asserts that the service of the husband’s answer, interposing counterclaims for divorce and specific performance of the prenuptial agreement, required her to serve a responsive pleading in defense of said counterclaims; that she would be entitled to rely upon CPLR 203 in defense of said counterclaims; and that as the Appellate Division decision was rendered on a record that did not contain her responsive pleading, it did not summarily grant the husband’s second counterclaim, nor did it determine her right to rely on CPLR 203 in said responsive pleading. She further points out that the Appellate Division did not, and could not, address the affirmative defense of lack of authenticity raised in her reply which was not part of the record on appeal.
The husband emphasizes that the wife argued on appeal that pursuant to the Court of Appeals decision in Bloomfield v Bloomfield (97 NY2d 188 [2001]), a matrimonial litigant, who was either a plaintiff or a defendant, could seek to defend a claim seeking to adjudicate the validity of a prenuptial agreement being asserted to deprive a court of jurisdiction to equitably distribute marital assets. He points to the language of the order dated March 8, 2004 that states that CPLR 203 (d) permits a defendant to assert an otherwise untimely claim, but does not serve to permit a defendant to obtain affirmative relief. He interprets the Appellate Division’s order of March 8, 2004 as holding that only a defendant in a matrimonial action can rely on CPLR 203 (d) to seek rescission of a prenuptial agreement and that it is irrelevant that issue had not been joined as to his counterclaims as of the date of the submission of the motions in issue.
The court finds the husband’s interpretation of the Appellate Division’s decision and order is untenable in that (1) it does not reflect the language employed by the Appellate Division’s order dated March 8, 2004; (2) it is contrary to applicable pleading procedures permitted by the CPLR; and (3) it is morally repugnant and unequivocally violative of public policy. These issues will be addressed herein below as follows:
*360 The Language of the Decision and Order Dated March 8, 2004
Except in certain limited cases in which a specific finding is made that parties “deliberately charted” a prejoinder-of-issue “course” seeking summary judgment (see, e.g., Four Seasons Hotels v Vinnik, 127 AD2d 310 [1987]), a court is powerless to entertain a summary judgment application prior to joinder of issue (CPLR 3212 [a]; see, Chakir v Dime Sav. Bank of N.Y., 234 AD2d 577 [1996]; Hickey v Travelers Ins. Co., 158 AD2d 112 [1990]). It is uncontroverted that the record before this court and the Appellate Division was submitted prior to joinder of issue with regard to the husband’s counterclaims. Accordingly, and appropriately, the Appellate Division did not consider and did not summarily grant or deny the husband’s second counterclaim seeking specific performance of the prenuptial agreement. The decision makes no mention whatsoever of the husband’s second counterclaim. In the first paragraph, it describes the trial court order as having granted the wife’s motion for partial summary judgment on her third and fourth causes of action and having denied the husband’s cross motion seeking summary judgment dismissing said third and fourth causes of action. The decretal paragraph of the order dated March 8, 2004 dismisses the third and fourth causes of action as time-barred, but does not grant the husband judgment on his second counterclaim. Accordingly, this court finds that the Appellate Division did not address the husband’s second counterclaim or the issue of the wife’s entitlement to serve a responsive pleading to his second counterclaim asserting a defense pursuant to CPLR 203 (d); and that its March 8, 2004 decision and order holds only that a matrimonial plaintiff may not affirmatively seek rescission of an otherwise time-barred prenuptial agreement in plaintiff’s original complaint.
The provisions of the CPLR governing pleadings authorize a matrimonial plaintiff to serve a responsive pleading seeking rescission of a prenuptial agreement.
Once the husband herein served an answer with counterclaims, the wife was obligated to serve a reply to avoid a default on the counterclaims (CPLR 3011). While Federal Rules of Civil Procedure rule 13 (a) mandates that a counterclaim to a counterclaim be interposed in a reply, the CPLR does not permit a plaintiff to include a counterclaim in a reply except in limited circumstances (see, e.g., Tri Term. Corp. v CITI Indus., 100 Misc 2d 477 [1979]; Edelman v Edelman, 88 Misc 2d 156 [1976]). Instead, a plaintiff who wishes to assert a claim in re *361 sponse to a counterclaim is permitted to serve an amended complaint, by right or leave of court, pursuant to CPLR 3025 (see, Siegel, NY Prac § 229 [3d ed]).
The wife herein had the right, upon service of the husband’s second counterclaim seeking enforcement of the prenuptial agreement, to serve a reply setting forth an affirmative defense asserting the unenforceability of said agreement pursuant to CPLR 203 (d), or to serve an amended complaint seeking rescission pursuant to CPLR 203 (d).
The following examples are instructional: Consider the 1888 case of Maders v Lawrence (49 Hun 360, 2 NYS 159 [1888]), the historical underpinning of the setoff doctrine incorporated in CPLR 203. Mr. Maders sold Mr. Lawrence a lame horse. By the time Mr. Maders commenced an action against Mr. Lawrence on the promissory note, Mr. Lawrence’s breach of warranty claim was timed-barred. Nevertheless, Mr. Lawrence was permitted to interpose an otherwise time-barred counterclaim to offset Mr. Maders’ action on the note. Now suppose that in an unrelated transaction, Mr. Lawrence had sold Mr. Maders a plow. Mr. Lawrence commences an action on the promissory note on the plow. Mr. Maders serves an answer including an affirmative defense of payment for the plow and, under the rule of permissive joinder of claims, interposes a counterclaim on the promissory note on the lame horse. It is clear that Mr. Lawrence, in response to the counterclaim, could amend his complaint to assert a lame horse breach of warranty setoff.
Another example involves a patient with a dislocated finger who trips and falls in an orthopedist’s office and commences a personal injury action sounding in negligence. The annoyed physician answers the complaint and counterclaims for a $15,000 unpaid bill for hip replacement surgery performed for the patient four years earlier. The patient, who dislocated his finger falling out of his wheelchair, may amend his complaint to set forth an offset claim relating to the hip surgery sounding in malpractice.
Similarly, in the instant case, once the husband served his second counterclaim, the wife could have served an amended complaint pursuant to CPLR 203 (d) seeking rescission. It is important to note that while the language of CPLR 203 (d) refers to a defense or counterclaim, a counterclaim is in essence a complaint and the pleader is a “plaintiff’ in his or her own right (see, Gildea v State of New York, 133 Misc 2d 269 [1986]; Siegel, NY Prac § 229 [3d ed]). It was not necessary, however, in the instant case for the wife to serve an amended complaint.
*362 The law is well settled that while a prenuptial agreement may not be challenged by motion practice (see, Deppe v Deppe, 287 AD2d 480 [2001]; Lambert v Lambert, 142 AD2d 557 [1986]), a party may assert the voidability of such agreement either by means of a plenary claim or by an affirmative defense (see, Darragh v Darragh, 163 AD2d 648 [1990]; Surlak v Surlak, 95 AD2d 371 [1983], appeal dismissed 61 NY2d 906 [1984]; 2 Foster, Freed and Brandes, Law and the Family New York § 12:62, at 1017-1022 [2d ed]). In fact, it appears in the case of Bloomfield v Bloomfield that neither party’s pleadings contained any cause of action, counterclaim or affirmative defense relating to a prenuptial agreement. The Appellate Division decision (281 AD2d 301 [2001]) recites that the preliminary conference order indicated that equitable distribution was in issue and the plaintiff husband intended to raise a prenuptial agreement as a defense to equitable distribution. Here, the wife could have asserted an affirmative defense that the agreement was void or voidable pursuant to CPLR 203 (b) in her reply. She did not assert such affirmative defense in her reply, as she had previously set forth causes of action for such relief in her complaint.
Public Policy
The husband urges this court to interpret the order dated March 8, 2004 so as to restrict the right to seek rescission of an otherwise time-barred prenuptial agreement to a party denoted as a defendant in the caption of a matrimonial action. This court finds that such interpretation would be morally reprehensible and clearly contrary to public policy.
Consider the following hypotheticals which the court emphasizes are in no manner related to the parties or the facts of this case, to wit:
Assume for purposes of the hypotheticals that there is a prenuptial agreement executed 25 years ago that is unquestionably the unconscionable product of overreaching. Assume the overreaching spouse (Midas) earns $10 million a year and has assets worth $1 billion, a large percentage of which were acquired in his name only, during the marriage. The other spouse (Needy), in her 40s, has an income of $20,000 a year from part-time employment as a preschool aide and interest income from a small inheritance. Her only asset is a half interest in the marital residence owned as tenants by the entirety with an equity of $400,000. The parties’ five children of their marriage are emancipated. The prenuptial agreement provides that upon the *363 parties living apart, separation or divorce, they each waive maintenance and equitable distribution of assets acquired in their individual names.
In the first hypothetical, after 25 years of marriage, Needy becomes a physically and verbally abusive spouse; she refuses to engage in sexual relations with Midas; she refuses to socialize with him; she flaunts extramarital affairs; moves out of the marital residence and becomes pregnant with another man’s child; she engages in every imaginable repugnant behavior until Midas commences an action for divorce. As a defendant in a divorce action she has the right to interpose a counterclaim for rescission pursuant to CPLR 203 (d).
In the second hypothetical, after 25 years of marriage, Midas falls in love with another woman, whom he wishes to marry. He undertakes a course of conduct intended to “persuade” Needy to sue him for divorce. He is verbally and physically abusive; he flaunts his affair; he becomes estranged from the parties’ children; he moves in with his paramour, who becomes pregnant; and he executes a new will disinheriting the parties’ children, leaving his billion dollars in assets to his paramour. According to the interpretation of the March 8, 2004 order urged by the husband in the action before this court, Needy will not be able to seek to rescind the prenuptial agreement if she commences a divorce action.
If this court were to adopt the husband’s interpretation, it would be encouraging the abusive Needy in the first hypothetical to engage in intolerable behavior to induce Midas to commence a divorce action so that she could wear the label of the defendant. In the second hypothetical, Midas would be encouraged to engage in such behaviors, compelling Needy to file for divorce, so that he could be the named defendant in a divorce action. In addition to encouraging abusive behavior between spouses, the interpretation urged by the husband herein discourages remarriage and thereby encourages the birth of out-of-wedlock children, by providing Midas and Needy in hypothetical two with strong incentives not to commence an action for divorce. The husband’s interpretation of the order dated March 8, 2004 further “rewards” an abusive spouse who is able to “persuade” or compel his or her spouse to sue for divorce, with the right to seek rescission, but denies that right to an abused spouse “persuaded” to file for divorce.
Clearly, the Appellate Division did not consider the husband’s second counterclaim or the wife’s right to serve a reply setting *364 forth an affirmative defense pursuant to CPLR 203 (d); and did not intend its order of March 8, 2004 to be interpreted so as to afford abusive defendant spouses the right to seek to void an unconscionable prenuptial agreement, while denying such right to an abused spouse “persuaded” by such abuse, to sue for divorce.
Based upon all of the foregoing, the motions are decided as follows: The wife’s motion for leave to renew is granted on the ground that her reply was served after the submission of the motions in issue, and therefore, the portion of the applications seeking a summary adjudication of the husband’s second counterclaim was not properly before the trial court or reviewed on appeal by the appellate court. Moreover, her motion is deemed to be an application for leave to serve an amended reply adding an additional affirmative defense that the prenuptial agreement dated September 16, 1988 is void or voidable, and, upon such renewal, and the reply as deemed amended by the court, the husband’s second counterclaim is dismissed and the agreement is set aside for the reasons set forth in the order of this court dated October 24, 2002.
[Portions of opinion omitted for purposes of publication.]