[640 NYS2d 103]

VICKIE WEINSTEIN, Respondent, v JACALYN F. BARNETT, Appellant.

First Department, April 4, 1996

### APPEARANCES OF COUNSEL

*Richard A. Williamson* of counsel, New York City *(Pamela M. Sloan* and *Carolyn L. Ziegler* on the brief; *Flemming, Zulack & Williamson, L. L. P.,* attorneys), for respondent.

*Bruce H. Wiener* of counsel, New York City *(Raymond B. Harding* and *Pamela A. Phillips* on the brief; *Fischbein Badillo Wagner Itzler,* attorneys), for appellant.

### OPINION OF THE COURT

WALLACH, J.

This appeal requires us to assess the legality of an agreement by plaintiff, an erstwhile client, to pay to defendant, her former attorney, a two million dollar bonus in connection with the successful conclusion of a matrimonial action.

In July 1992, plaintiff retained defendant, then a member of a law firm since dissolved, to represent her in a matrimonial dispute. At that time, plaintiff informed counsel that her husband, a successful Hollywood film producer, had offered her a lump-sum settlement by way of equitable distribution of $750,000. Over the ensuing two-year period, defendant's diligent efforts resulted in an August 1994 settlement proposal from the husband in excess of fifteen million dollars. In the pleadings before us, plaintiff concedes defendant's description of her services as "fabulous".

In the doubtlessly euphoric atmosphere attendant upon plaintiff's execution of the separation agreement and other settlement documents in New York City on August 18, 1994, plaintiff and defendant simultaneously executed and exchanged a one-page agreement (referred to by plaintiff as a "Performance Fee Document", by defendant as a "Bonus Agreement", and by the IAS Court as a "Performance Fee Agreement" or "PFA") which provided, in pertinent part, as follows:

"It is agreed by and between Vickie Delores Weinstein ('Weinstein') and Jacalyn F. Barnett ('Barnett') that:

"1. In light of the results achieved by Barnett for Weinstein in resolving her matrimonial dispute (especially in light of Robert Weinstein's initial offer of $750,000 for equitable distribution and maintenance), Weinstein has graciously and generously agreed to pay a performance fee of $2,000,000 (the 'Per-

formance Fee') in addition to the fees and expenses incurred herein. However, Barnett waives the outstanding fees and expenses incurred to date in the approximate sum of $41,000.

"2. The Performance Fee will be payable as follows:

"a. $1,000,000 upon transfer to you of the equitable distribution payment in paragraph 23.1 (a) of Weinstein's separation agreement, dated August 18, 1994;

"b. $500,000 on or before January 15, 1995; and

"c. $500,000 on or before July 15, 1995."

Plaintiff partially performed this agreement to the extent of timely payment to defendant on August 29, 1994 of the one million dollar installment pursuant to paragraph 2 (a). However, subsequent thereto, and for undisclosed reasons, plaintiff's former attitude of "grac[e] and genero[sity]" (¶ 1) toward defendant evaporated, and instead of paying the second installment of $500,000 due on January 15, 1995, plaintiff brought this action to recover the previous one million dollar payment. In her answer, defendant counterclaimed for the million dollar balance due under the terms of the agreement.

In April 1995, plaintiff moved for summary judgment upon her fifth cause of action for rescission on the ground that the agreement violated Code of Professional Responsibility DR 2-106 (C) (2) (22 NYCRR 1200.11 [c] [2]), which prohibits

"Any fee in a domestic relations matter to which Part 1400 of the joint rules of the Appellate Divisions [Procedure for Attorneys in Domestic Relations Matters] is applicable,

"(A) The payment or amount of which is contingent upon the securing of a divorce or upon the amount of maintenance, support, equitable distribution, or property settlement".

The motion court granted the relief sought, rescinding the agreement, granting judgment against defendant for the return of the one million dollars paid, less a $41,000 credit for unpaid hourly fees hitherto waived by defendant in the agreement, and dismissed "the counterclaim".[1] The court reasoned that because this attorney-client agreement came into being some 24 hours before the husband signed the separation agreement (which contained provisions and mechanisms for an uncontested divorce), the Disciplinary Rule was violated as a matter of law. The court dealt as follows with defendant's contention that the separation agreement was complete and the husband's

---

1. Presumably, this was the counterclaim that sought to estop plaintiff from rescinding the agreement. Another counterclaim sought recovery of the balance due under the agreement.

execution of the papers was merely a "ministerial act": "This court's experience is that, despite the sense of counsel that a deal has been struck and that a separation agreement is final, there are often last minute disagreements and proposed changes by the client. This matter was obviously not final, at least until signed by plaintiff's then husband. That uncertainty meant that, at the time of its execution, the PFA was contingent; it was contingent on the husband's execution of the separation agreement and his counsel's approval of certain documents. If the husband had raised any issues, defendant's self-interest in the result would have created the conflicted loyalty to the client that DR 2-106 (C) (2) was designed to prevent." Expressing no opinion as to the propriety of a truly voluntary bonus agreement after completion of the entire proceeding, the court concluded that the agreement when executed was contingent, and therefore invalid under DR 2-106 (C) (2).

This late-afternoon view of the shadowy uncertainties that beset the human condition has, to be sure, a respectable ancestry. Even before the Common Era, the author of Ecclesiastes wrote (IX:11): "I returned, and saw under the sun that the race is not to the swift, nor the battle to the strong, neither yet bread to the wise, nor yet riches to men of understanding, nor yet favour to men of skill; but time and chance happeneth to them all." A modern poet[2] has distilled the thought in seven words: "Things fall apart; the centre cannot hold."

Yet neither personal philosophy nor experience, however deep, can dislodge the well-settled rule applicable to summary judgment that "[i]ssue-finding, rather than issue-determination, is the key to the procedure" (*Esteve v Abad*, 271 App Div 725, 727). The issue here is whether, on the one hand, the husband's signature was a mere formality or, to the contrary, any genuine impediment remained to achieve finality. In the context of summary judgment, plaintiff's case is advanced entirely on the affidavit of her present lawyer, who lacks any knowledge of what actually transpired, without any affidavit from her. Also lacking is any evidence from the husband, or from any of the lawyers who represented him at the critical interval of time. Whether, to put it in the vernacular, this was "a done deal" on August 18th, or the arrangement remained "contingent", is, in our view, a question of fact—perhaps subtle and nuanced, but a factual issue nonetheless. "The question of contractual intent

2. William Butler Yeats, "The Second Coming".

[is] essentially factual in nature" (*Four Seasons Hotels v Vinnik*, 127 AD2d 310, 318), particularly where a writing is incomplete and recourse must be had to surrounding circumstances. That principle is most applicable here where the relevant intent to be determined is not that pertaining to the parties to the PFA, but rather the intent of the spousal parties to a separation agreement which is not part of the record before us, no doubt due to its provisions for confidentiality.[3]

The record does contain a letter-stipulation between counsel, dated August 18, 1994, delineating the mechanical steps to be taken with respect to the payment of monies from husband to wife following delivery of revised pages to be inserted in the separation agreement, appropriately initialed. Without extrinsic evidence, this stipulation is insufficient by itself to resolve the fundamental factual issue.

Accordingly, the judgment, Supreme Court, New York County (Lewis R. Friedman, J.), entered August 3, 1995, which summarily granted plaintiff $959,000, plus interest and costs, on her fifth cause of action for rescission, and dismissed defendant's counterclaim, should be reversed, on the law, without costs, the judgment vacated, the motion denied, the counterclaim reinstated, and the matter remanded for further proceedings before another Judge. Plaintiff's motion to supplement the record on appeal is denied.

ROSENBERGER, J. P., RUBIN, NARDELLI and MAZZARELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered August 3, 1995, reversed, on the law, without costs, the judgment vacated, plaintiff's motion for summary judgment on the cause of action seeking rescission denied, the counterclaim reinstated, and the matter remanded for further proceedings before another Judge. Plaintiff's motion to supplement the record on appeal is denied.

---

3. By motion submitted four weeks after this appeal was argued, plaintiff has sought leave to supplement the record with a copy of her 50-page divorce settlement agreement, which was obviously not before the motion court. We reject this voluminous submission as untimely (*see*, 22 NYCRR 600.11 [f] [4]).