OPINION OF THE COURT
Marylin G. Diamond, J.
This postdivorce action involving child support was heard before me without a jury on March 25, 27, and April 2, 1997.
Plaintiff and defendant were married on December 24, 1973 in New York City, and had one child, Ariel, born on January 6, 1978. On February 15, 1980, plaintiff and defendant executed an agreement concerning maintenance, child support, custody, visitation and personal property (the Agreement), which was incorporated, but not merged in their judgment of divorce entered on April 17, 1980. At the time of the parties’ divorce, plaintiff was a psychotherapist and author and defendant was a full-time student with an annual income from employment as a part-time taxi driver of approximately $4,400.
With respect to child support, article II, paragraph B of the Agreement provides that:
“The Wife agrees to provide to the Husband the sum of Five Thousand dollars ($5,000.00) in the following payments:
“(1) Two thousand dollars ($2,000.00) as of the date of the signing of this agreement.
*239 “(2) Fifteen hundred dollars ($1,500.00) in December 1980.
“(3) Fifteen hundred dollars ($1,500.00) in December 1981.” Paragraph B further provides that: “The Husband agrees that instead of any payments, the money shall be utilized on his behalf for Ariel David’s welfare. For example, the Wife agrees that she will pay for Life Insurance for the Husband and herself, with their son as the beneficiary. The Wife will pay for their son’s school tuition and health care.” Although defendant did not agree to a specific amount of support for Ariel, article II, paragraph E of the Agreement provides that: “The Husband agrees that he will contribute to his son, Ariel David’s welfare according to his means.”
In this postdivorce action, plaintiff proceeded to trial for an award of child support de novo in accordance with the Child Support Standards Act (L 1989, ch 567 [the CSS A]) retroactive to the date of the commencement of the instant action and counsel fees.
FINDINGS OF FACT
Plaintiff former wife has always been the custodial parent and has provided virtually all of Ariel’s financial support. She is a 56-year-old psychologist who received her doctorate in psychology in 1969 from the New School For Social Research. She is a noted author, lecturer, consultant and has authored many books and publications including Women and Madness. Plaintiff was also a coeditor and contributor to Feminism For Mothers in Women’s Studies Health and Psychology. Plaintiff is presently a psychology professor at the City University of New York (CUNY). She became disabled with Chronic Fatigue Immune Dysfunction Syndrome in the latter part of 1991 and was forced to take medical disability leave from her teaching position until January 1997 when she returned to full-time teaching. In 1997, she estimates that she will earn $69,532 from CUNY and will receive a writing advance of $6,000.
Defendant former husband defaulted in appearing for trial and presented no witnesses. Prior to trial he fled the courthouse and later left for Israel despite repeated warnings that the trial would proceed without him. The evidence submitted during trial establishes that defendant is now 46 years old. He has completed his schooling and is presently a licensed chiropractor in the State of New York, with offices in Queens, Brooklyn, the Bronx, and Manhattan. Defendant earns substantially more than he did at the time of the Agreement when he was a student and driving a cab part time.
*240 Ariel presently attends Brandéis University, where the total cost of his tuition, room and board, activity fee and health coverage is $29,000 per year. The cost has been paid by loans from plaintiffs mother and various financial aid grants. Defendant refused to pay any portion of Ariel’s college expenses.
CONCLUSIONS OF LAW
Child Support Obligation In The Absence Of An Agreed-Upon Amount
In opposition to plaintiffs claim to fix a specific level of child support, defendant argues that plaintiff is precluded from modifying the parties’ agreement with respect to child support for Ariel, citing Matter of Boden v Boden (42 NY2d 210 [1977]). This argument is misplaced. Plaintiff does not seek upward modification of a fixed level of child support by claiming that the level of support provided for in the Agreement is insufficient to meet the child’s present needs or that there has been an unanticipated and unreasonable change in circumstances. Unlike Boden, the issues presented are whether this court may fix a specific amount of child support where none has been provided in the separation agreement and whether the CSSA may be utilized to fix a specific dollar amount of support where the agreement was entered into prior to the effective date of the CSSA.
In Boden, the parties had entered into an agreement which “expressly provided for an amount which the parties felt was adequate for child support” (Matter of Boden v Boden, supra, 42 NY2d, at 213). Here, in article II, paragraph E of the Agreement defendant promised that he would “contribute to his son, Ariel David’s welfare according to his means.” No express or fixed dollar amount is set forth.
Although defendant promised to support Ariel to the best of his ability, the contributions defendant made pursuant to this clause have been minimal.
“Q. Other than that $500 a year allocation, can you tell us what, if any, other expenses or contributions Dr. Bronstein made for Ariel’s child support.
“A. Every so often, that means one in every three to four months, he would send a check for $300, maybe a few times he would send a check for $400 * * * And then there were long periods when he sent nothing. And then there were even longer periods when he would not buy Ariel clothing or pay for vacations or entertainment of any kind or cultural improve *241 ment or academic counseling or Hebrew school. He never paid for Hebrew school and he wouldn’t pay for the Bar Mitzvah either.” (Mar. 27, 1997 trial transcript, at 162.)
The evidence at trial clearly establishes that defendant’s contributions to Ariel’s welfare were well below his ability to pay.
In order to determine the intent of defendant’s promise to contribute child support according to his means, this court will be guided by the law of contracts since the principle is well settled that a separation agreement entered into by spouses in contemplation of divorce is a contract and is subject to principles of contract interpretation (Matter of Tillim v Fuks, 221 AD2d 642, 643 [2d Dept 1995]). The question of contractual intent is essentially factual in nature (Weinstein v Barnett, 219 AD2d 77, 80-81 [1st Dept 1996]) and the intent of the parties is paramount.
Plaintiffs undisputed and credible testimony concerning the intent of the parties with respect to the child support clause is as follows:
“Q. Can you tell us what the intent was, if you recall, with respect to Dr. Bronstein, at that time Mr. Bronstein, future child support obligations * * *
“A. What Nachmy said is that when he got a real job or completed advanced training, that he would then of course begin to support Ariel to the best of his ability.” (Mar. 27, 1997 trial transcript, at 142.)
At the time the parties entered into the Agreement, defendant “drove a taxi” and did “some other odd jobs” while attending college. This situation was to be temporary and the parties contemplated the exact amount would be determined when defendant completed his education and began working full time. I find that the language employed by the parties concerning the amount of child support for Ariel manifests a clear intent that a specific dollar amount of support would be fixed “when [defendant] got a real job or completed advanced training”.
The absence of a specific dollar amount for child support in the agreement does not preclude this court from fixing an amount of support (cf., Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989]). According to basic contract interpretation, where an agreement is silent as to a dollar amount, there are two methods for setting a specific dollar amount: (1) the agreement can contain a methodology for determining the missing term within its four corners, or (2) *242 reference can be made to an objective extrinsic event, condition or standard on which the amount is made to depend (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91-92 [1991], citing and relying on Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, supra). Here, although the Agreement contains no methodology to fix defendant’s level of support, there is an objective standard to calculate child support in this State.
The CSSA was enacted in 1989 to remedy problems caused by the failure of legally responsible individuals to meet their child support obligations (L 1989, ch 567; see, Domestic Relations Law § 240). The Legislature adopted these guidelines that permit judicial discretion and establish minimum and meaningful standards of obligations based on the premise that both parents share the responsibilities for child support (L 1989, ch 567, § 1).
Defendant argues that there can be no retroactive application of the CSSA child support guidelines since the parties’ Agreement was entered into prior to its enactment, citing Sloam v Sloam (185 AD2d 808 [2d Dept 1992]). Defendant’s reliance on Sloam is misplaced. In that case, the Court held that a subsequent amendment to the CSSA, rather than the CSSA itself, could not be retroactively applied because of the clear legislative intent that the amendment take effect immediately (supra, at 809).
I find that given the clear and unequivocal recognition in this State of the paramount interests of children in need of support the CSSA represents an important public and social policy governing child support issues (see, Domestic Relations Law § 240 [1-b] [l]). Further, the CSSA formula creates a presumption that the statutory guidelines will yield the correct amount of child support (see, Matter of Commissioner of Social Servs. [Goodwin] v Brown, 229 AD2d 537, 538 [2d Dept 1996]). Since the CSSA guidelines are presumed to yield a reasonable amount of child support, it is irrelevant that the Agreement was entered into prior to the enactment of the CSSA where the CSSA is used, as here, as an objective standard to supply a specific dollar amount of child support where none has been provided in the Agreement.
College Education, Medical And Dental Insurance And Unreimbused Health Care Expenses
Plaintiff also seeks contribution from defendant for Ariel’s college education and medical expenses. Article II, paragraph *243 B of the parties’ Agreement clearly provides that: “The Wife will pay for their son’s school tuition and health care.” Unlike the agreement in Boden (supra, at 213), which the Court of Appeals found had manifested “an understanding that the child might pursue a college education” and in addition provided for a fund to cover such expenses, the Agreement does not manifest any understanding about who would pay for Ariel’s college education. While plaintiff agreed to pay for Ariel’s “school tuition”, I find that “school tuition” cannot be read to mean college expenses for a child who was two years old at the time the parties entered into the Agreement without additional language or a provision evidencing the parties’ intent that “school tuition” means college expenses (Otero v Otero, 222 AD2d 328, 329 [1st Dept 1995]; cf., Matter of Boden v Boden, supra, 42 NY2d, at 213). Further evidence that the parties did not contemplate that this Agreement covered who would pay for Ariel’s college expenses is their 1982 stipulation on the record, which provides, in relevant part, as follows:
“mr. mandelker:[1] The husband has represented that he is a full time student with an income from part time employment of $80 per week. Based on that status and his present income the parties agree as follows:
“mr. fidler:[2] Out of the sale of the proceeds of the aforementioned co-op, the parties agree that their respective attorneys shall each be allocated the sum of $6,000 for the following purpose only: That an account will be opened up in the name of Nachmy Bronstein in trust for Ariel David Chesler-Bronstein. And Phyllis Chesler will open up an account in the sum of $6,000 in trust for Ariel in the same manner. The income from each of these accounts shall be used for the education of Ariel.
“mr. mandelker: The parties undertake to invest the principal of these accounts in the highest interest bearing investments available to them * * *
“mr. mandelker: Each year each party shall invade the principal of each of said accounts to the extent of $500, which respective sums of $500 shall also be paid to Phyllis Chesler for the education of Ariel David Chesler-Bronstein.”
Thus, pursuant to this stipulation, each agreed to set up a fund from the sale of the co-op with each making a contribution of $6,000. This fund was to be used for the “education of *244 Ariel”. Once again, the word “higher” or “college” is missing. Once again, it is based on the defendant’s then status as a student and his limited income.
Since the Agreement is silent on the issue of who would pay for Ariel’s college education, defendant may be directed to pay for Ariel’s college education if the circumstances so warrant (Rocchio v Rocchio, 213 AD2d 535, 536 [2d Dept 1995]; Otero v Otero, supra, 222 AD2d, at 329). In determining whether defendant is obligated to pay such educational expenses, the circumstances of the case and the respective parties, the best interests of Ariel and the requirements of justice must all be considered (Domestic Relations Law § 240 [1-b] [c] [7]; Matter of McLoughlin v McLoughlin, 213 AD2d 650, 651 [2d Dept 1995]).
In opposition to plaintiffs claim that defendant should pay for Ariel’s college education, defendant argues (1) that since plaintiff decided to send Ariel to a private university she should be solely responsible for the costs; and (2) that the cost of college should be limited to the cost of a State University. Defendant’s arguments are without merit. It cannot be disputed that Ariel is an intellectually superior child who attended private high school (St. Ann’s) and that it would be in his best interests to receive the enriched education offered at an institution such as Brandéis. The record is clear that both plaintiff and defendant have had the benefit of graduate degrees and that both their livelihoods would have been impossible without the benefit of advanced education. It is also clear that given the educational history of both parents Ariel would have certainly attended college had the parents remained married. The circumstances of the parties also compel a finding that defendant pay for Ariel’s college expenses. Defendant earns far more money than plaintiff even though she has returned to work full time and no longer is on disability leave. Defendant is approximately 10 years younger than plaintiff and has earning potential for a longer period of time. Moreover, during Ariel’s freshman year, and for the four years preceding Ariel’s matriculation, plaintiff was disabled and subsisting on disability payments and loans from her mother. In 1995, her total income from disability and grants was approximately $36,000. In 1996, Ariel’s freshman year at Brandéis, it was approximately $31,000. Since the divorce, plaintiff has borne virtually all the financial burden of raising Ariel.
Finally, defendant cannot escape paying for college education by claiming plaintiff did not consult with him about Ariel’s *245 education as required under article III of their Agreement given his uncontroverted history of noninvolvement in Ariel’s upbringing. Nor can defendant limit his contribution to Ariel’s college expenses to the cost of a State school in view of his uncontroverted affirmative refusal to produce the required financial data necessary to process Ariel’s financial aid application. It is one thing to refuse to contribute child support and defendant has gone to great lengths not to contribute. It is another to refuse to cooperate to enable Ariel to obtain financial aid. This court will not condone such conduct. Justice requires that defendant bear the full cost of Ariel’s college expenses, including tuition, room, board and activity fees (Domestic Relations Law § 240 [1-b] [c] [7]).
[Portions of opinion omitted for purposes of publication.]

. Lawrence A. Mandelker, Esq. represented plaintiff.

. Martin Fidler, Esq. represented defendant.