# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2012

No. 11-11139

Lyle W. Cayce
Clerk

HIGHLAND CAPITAL MANAGEMENT, L.P.

Plaintiff-Appellant

v.

BANK OF AMERICA, NATIONAL ASSOCIATION

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:

In this case, Plaintiff-Appellant Highland Capital Management, L.P. ("Highland") appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of its claims for breach of contract and promissory estoppel brought against Defendant-Appellee Bank of America, National Association ("Bank of America"). Because we find that the district court was justified in dismissing Highland's promissory estoppel claim, but that it erred in dismissing Highland's breach of contract claim, we affirm in part, and reverse and remand in part.

No. 11-11139

## FACTUAL AND PROCEDURAL BACKGROUND

Because Highland appeals the district court's order granting Bank of America's motion to dismiss under Rule 12(b)(6), we recite the facts as stated in Highland's complaint. *See, e.g., Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 794 (5th Cir. 2011). In late 2009, party representatives for Highland and Bank of America entered negotiations seeking to reach an agreement whereby Bank of America would sell its interest in certain bank debt (the "Regency Loan") to Highland. On December 3, 2009, Highland's representative, Pat Daugherty, called Bank of America's representative, Andrew Maidman, to finalize the agreement and its terms. According to Highland's First Amended Complaint, Daugherty and Maidman agreed in the phone conversation to all material terms of the debt trade, including the description, amount, and price of the debt to be sold, namely, $15,500,000 of the Regency Loan at the price of 93.5% of par. Pursuant to industry practice, the agreement also incorporated standard terms and conditions published by the Loan Syndications and Trading Association, Inc. ("LSTA") providing that an oral debt-trade agreement is binding on the parties, so long as the agreement includes all material terms. According to Highland, Maidman did not reserve any non-LSTA, non-industry terms or conditions during the December 3 phone call.

Following the December 3 phone conversation and on that same day, Daugherty sent an email to Maidman in which he confirmed that the debt-trade agreement was complete. Maidman responded shortly thereafter with an email confirming the agreement and adding that it was "subject to appropriate consents and documentation." Pl.'s First Am. Compl. ¶ 10, *Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 2011 WL 5428779 (N.D. Tex. Nov. 7, 2011) (No. 3:10-CV-1632-L) [hereinafter Pl.'s Compl.]; *see also Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, No. 3:10-CV-1632-L, 2011 WL 5428779, at *5 (N.D. Tex. Nov. 7, 2011). Highland alleged that, pursuant to industry practices,

2

this "subject to" language called for the incorporation of the LSTA's standard terms in the agreement, but did not undermine the enforceability of the original oral agreement, nor did it permit either party to demand the inclusion of non-industry or non-LSTA standard terms in the agreement.

After December 3, 2009, Bank of America refused to settle the debt trade unless Highland agreed to include additional terms in the agreement relating, among other matters, to indemnification, legal fees, and waiver of legal claims. According to Highland, these additional terms departed from the standard terms governing the December 3 oral agreement.  In response, Highland filed suit against Bank of America on July 27, 2010 for breach of contract and promissory estoppel, alleging that the terms sought by Bank of America did not conform to the parties' oral agreement.  Because the Regency Loan was paid off at 100% of par, Highland claimed that Bank of America's failure to settle the deal as agreed upon caused Highland to lose the increased value of the principal of the Regency Loan.  Bank of America filed a motion to dismiss under Rule 12(b)(6) and on November 7, 2011, the district court granted the motion.  This timely appeal followed.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).  Those facts, however, "taken as true, [must] state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a

No. 11-11139

cause of action." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ANALYSIS

Relying on the "subject to" language of the parties' December 3, 2009 emails, the district court held that, because the parties did not intend to be bound without additional "consents and documentation," no binding contract was formed on December 3, 2009, either through the December 3 phone conversation or the parties' subsequent emails. *Highland Capital Mgmt.*, 2011 WL 5428779, at *5. With respect to the promissory estoppel claim, the court held that Highland did not allege a clear and unambiguous promise, nor did it allege reasonable reliance on that promise. *Id.* at *8. On appeal, Highland argues that the district court's dismissal of Highland's breach of contract claim was erroneous because the court failed to accept Highland's well-pleaded facts as true and, in addition, improperly considered factual issues regarding the contracting parties' intent and industry standards governing the formation of the alleged contract. Highland argues that, taken as true, its well-pleaded facts establish that the December 3, 2009 phone conversation created a binding contract.[1] Highland also argues on appeal that its well-pleaded allegations demonstrate the existence of a clear and unambiguous promise on which Highland relied, thus rendering the district court's dismissal of Highland's promissory estoppel claim erroneous. We address Highland's arguments in turn.

---

[1] Highland also alleges that, even if no binding oral contract was formed, a preliminary agreement was formed whereby Bank of America was obligated to engage in good-faith negotiations according to industry practices. Because we hold that the district court erred in dismissing Highland's claim that a binding oral contract was formed, we need not reach this alternative argument.

4

No. 11-11139

I.    Breach of Contract

An enforceable contract requires "a mutual intent to be bound." *Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1, 5 (N.Y. App. Div. 1987).[2] If a contract is unambiguous, then a court may decide the parties' intent as a matter of law, but where the contract is ambiguous, or "cannot be interpreted without resort to extrinsic evidence," then the factfinder must determine the parties' intent. *Brighton Inv., Ltd. v. Har-ZVI*, 932 N.Y.S.2d 214, 216 (N.Y. App. Div. 2011). Courts use an objective test to determine whether the parties intended to enter into a contract, looking to "the manifestation of a party's intention rather than the actual or real intention." *Vinnik*, 515 N.Y.S.2d at 6 (quoting 21 N.Y. Jur. 2d, Contracts, § 29). In addition, even if a writing indicates that the parties left certain terms open for further negotiation, the parties are still bound by the contract if the matters left open were not deemed to be material by the parties. *Id*.

Oral contracts are also valid under New York law, *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985), but if the parties do not intend to be bound by an oral contract until a writing is signed, then they are not bound until that time, *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007); *see also R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984). With respect to oral contracts, whether a contracting party intends to be bound is a question of fact for the factfinder to resolve. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 576 (2d Cir. 1993). Courts generally consider four

---

[2] Highland originally filed suit in Texas state court, after which Bank of America removed the action to federal district court based on diversity jurisdiction. The district court applied New York law "[b]ecause the LSTA Standard Terms state that they are governed by New York law and both parties acknowledge that Plaintiff's claims are governed by New York law[.]" *Highland Capital Mgmt.*, 2011 WL 5428779, at *2. We likewise analyze Highland's claims under New York law.

factors in determining whether parties intend to be bound absent a writing: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Powell*, 497 F.3d at 129. The circumstances indicating an intent to be bound "may be shown by 'oral testimony or by correspondence or other preliminary or partially complete writings.'" *Winston*, 777 F.2d at 81 (quoting Restatement (Second) of Contracts § 27 cmt. c (1981)).

Relying on the language in the parties' December 3 emails, the district court held that Highland failed to state a claim for breach of contract "[b]ecause the parties' communications do not reveal an intent to be bound absent additional consents and documentation." *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at *5. Specifically, the district court focused on Maidman's email stating that the agreement was "subject to appropriate consents and documentation" and Daugherty's email stating that the parties were "done on this trade subject to agent and borrower consents." *Id.* (emphasis omitted). The district court found that these emails clearly show that the parties recognized that "further consents and documentation were necessary to finalize their agreement," such that there was no intent to be bound, and thus no valid claim for breach of contract under New York law. *Id.*

In contrast, Highland's complaint alleges that the parties had orally agreed to all material terms of the trade during their telephone call without reserving any non-industry terms or conditions, and agreed that the trade was subject only to the standard terms of the LSTA based on the parties' past dealings. *See* Pl.'s Compl. ¶¶ 9, 20. Furthermore, Highland alleged that the

LSTA standard terms specify that "the parties agree to be 'legally bound' by any subsequent phone call or email between them that reaches an agreement as to the material terms," and that "a party must expressly reserve any non-industry standard terms at the time the agreement is reached by phone call, email or otherwise, or else those terms are waived and the agreement is a binding and enforceable contract." *Id.* ¶ 13 (emphasis omitted).

When viewed in the light most favorable to Highland, and taking the above allegations as true, Highland has made a viable claim for breach of an oral contract. Highland alleged in its complaint that, notwithstanding their subsequent emails, the parties entered a binding and enforceable oral agreement on December 3, 2009—an agreement which, pursuant to the allegedly agreed-to standard terms of the LSTA, was not susceptible to the addition of non-industry terms or conditions. Taken as true, these allegations support a viable claim for breach of contract when coupled with Highland's assertion that after the December 3 agreement, Bank of America "demanded additional, non-industry standard terms to be included . . . before [Bank of America] would comply with its obligation to sell its interest in the Regency Loan." *Id.* ¶ 25.

The district court viewed the "subject to" language in the parties' subsequent emails as negating any "intent to be bound absent additional consents and documentation," *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at *5, and it is true that Highland's complaint admits that Maidman's email stated that any agreement between Highland and Bank of America was "subject to 'appropriate consents and documentation,'" Pl.'s Compl. ¶ 21. But the district court's interpretation of the "subject to" language ignores other facts pleaded by Highland which, when accepted as true, define this language in a manner that preserves Highland's breach of contract claim. Most notably, Highland's

complaint asserts that "the consents and documentation referenced in [Bank of America]'s email to Highland were constrained by the LSTA Standard Terms, and any specific terms that deviated from the LSTA Standard Terms were required to be expressly reserved in [Bank of America]'s confirmation of the trade at the time the binding agreement was reached telephonically." *Id.* ¶ 24 (emphasis omitted). Specifically, Highland alleged that, within the industry, all debt trades are typically subject to the borrower's consent, and "even if the borrower does not consent, the LSTA Standard Terms still require the parties to close the transaction as a participation rather than an assignment." *Id.* ¶ 22 (emphasis omitted). Therefore, according to Highland, "the borrower's consent is not a condition precedent to the formation of a binding and enforceable trade." *Id.* Similarly, with respect to the reference to "documentation" in Maidman's email, the complaint alleges that "bank debt trades conducted under the LSTA Standard Terms typically involve the execution of a standard trade confirmation to close the transaction," but the execution of a confirmation "is not a condition precedent to the formation of a binding and enforceable trade once the parties agree to the material terms of the sale." *Id.* ¶ 23.[3] Accordingly, because Highland asserted in its complaint that the parties did not reserve any non-industry, non-LSTA standard terms, but Bank of America nonetheless demanded non-standard terms after December 3, 2009, *id.* ¶ 24., Highland presents a viable claim for breach of contract.

The district court stated that industry practice "cannot create an intent to be bound when the parties' intentions as expressed in their communications

---

[3] Highland quotes the Handbook of Loan Syndications and Trading in support of this allegation, which states that "[w]hile the confirmation is the first step in closing a trade, it is not the first step in making a trade. The trade is actually made orally between two market participants . . . . [L]oan trades done orally are binding contracts, so long as the material terms of the contract have been agreed upon." *Id.* ¶ 14 (emphasis omitted).

indicate otherwise," but can merely "be considered in determining whether a contract was formed." *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at \*5. While this may be a correct statement of law, Highland does not look merely to industry practice in pleading intent,[4] but also states that the parties agreed to all material terms, as well as the LSTA standard terms. Pl.'s Compl. ¶ 9. Highland asserts that, according to the latter, once parties have executed a confirmation incorporating the LSTA standard terms, they "agre[e] to be legally bound to any other transaction between them . . . upon reaching agreement to the terms thereof (whether by telephone, exchange or electronic messages or otherwise . . .), subject to all the other terms and conditions set forth in any confirmation relating to such transaction, or otherwise agreed." *Id.* ¶ 12.[5] Highland's complaint alleges that Highland and Bank of America had entered into past trades governed by the LSTA standard terms, such that any future trades between them were bound by those terms. *Id.* ¶¶ 16-20. Thus, it appears from Highland's allegations regarding the LSTA standard terms that the parties were bound once they orally agreed to the material terms of their transaction, even if the later written confirmation would contain additional "subject to"

---

[4] We are also not convinced that the parties' communications contradict a finding that the parties intended, according to industry practices, to be bound by their December 3 oral agreement, at least not when Highland's explanation of the meaning of the "subject to consents and documentation" language is taken to be true. Bank of America may dispute whether the debt-trade industry's practices actually support Highland's definition of the "subject to" language, but industry practice and usage are issues of fact to be determined by the trier of fact. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 134 (2d Cir. 2006).

[5] The district court found that this "unambiguous language in the LSTA Standard Terms" did not preclude the inclusion of non-LSTA terms, *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at \*5, but this conclusion is not supported by the facts alleged in Highland's complaint. As discussed above, Highland adequately alleged the limiting effect of the LSTA standard terms on the parties' December 3, 2009 oral agreement. *See* Pl.'s Compl. ¶¶ 13–15, 24.

conditions. Bank of America may argue that the parties never agreed on all material terms, but that is an issue of fact, and it should not be a basis for dismissing the claim. *See Red Oak Fund, L.P. v. MacKenzie Partners, Inc.*, 934 N.Y.S.2d 401, 402–03 (N.Y. App. Div. 2011) ("Defendant's claim that there was no meeting of the minds . . . is merely another way of disputing plaintiff's allegations regarding the parties' agreement.").

Because the district court viewed the parties' emails as indicating a lack of intent to be bound, it did not employ the four-factor test used in New York to analyze intent.   Again, that test asks "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Powell*, 497 F.3d at 129.  Taking Highland's allegations as true, there is no indication that Bank of America expressly reserved the right not to be bound without a writing. While there was no partial performance, Highland does allege that the parties agreed to all material terms.  *See Vinnik*, 515 N.Y.S.2d at 6 (stating that material terms must be definite, but that "[a] contract does not necessarily lack all effect merely because it expresses the idea that something is left to future agreement").  Finally, the LSTA standard terms and the Handbook of Loan Syndications and Trading both indicate that debt trades can be conducted orally, and only later committed to a written confirmation.  The test therefore does not result in a clear finding that the parties did not intend to be bound.

As a final matter, it is helpful to compare this case to one at the summary judgment stage, which is a distinction that is dispositive in our review of the district court's ruling.  The above test is not overly useful in analyzing the

parties' intent at the motion to dismiss stage because there is a lack of evidence to which the test can be applied. As the district court stated, it is true that in New York an unambiguous contract is construed as a matter of law. *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at *3 (citing *Metro. Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)). But this case involves an oral contract, the terms of which were not memorialized in a writing, draft or otherwise. Like an ambiguous contract, the alleged agreement here cannot be analyzed without resort to extrinsic evidence. Furthermore, as stated earlier, whether or not parties intend to be bound by an oral contract is usually a question of fact for the factfinder. *Consarc*, 996 F.2d at 576.

The emails following the allegedly binding oral contract do not "unambiguously" indicate that the parties did not intend to be bound. This is shown by Highland's pleadings regarding the manner in which debt deals are conducted, the meaning of "subject to" language in those deals, and the particulars of the parties' negotiations here. The issue of intent is thus unfit for a decision as a matter of law at this early stage. *See Vinnik*, 515 N.Y.S.2d at 6 ("Being essentially factual in nature, proof bearing upon the question of contractual intent should not be considered by the court prior to joinder of issue unless . . . the court gives notice of its intention to give the case summary judgment treatment."). Our view is bolstered by the fact that much of the relevant caselaw relied upon by the district court involves cases dealt with at the summary judgment stage. *See, e.g., Consarc*, 996 F.2d at 577 (reversing summary judgment); *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (same); *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 427–428 (2d Cir. 1992) (same); *see also Har-ZVI*, 932 N.Y.S.2d at 217 (affirming denial of summary judgment because the parties'

No. 11-11139

written communications were not clear, such that "intent must be determined by assessing . . . the totality of the circumstances," which "depends on assessments of credibility and inferences to be drawn from the conflicting evidence, and so must be made by the trier of fact"). Moreover, since Highland's and Bank of America's emails could reasonably indicate an intent to be bound according to industry custom, or conversely could indicate that there was not yet a binding agreement, dismissal is inappropriate without other evidence of intent—evidence which simply cannot be ascertained at the motion to dismiss stage since we may not look beyond Highland's well-pleaded facts.

Here, the emails between Highland and Bank of America do not clearly negate an intent to be bound when viewed in light of Highland's well-pleaded facts. *See Vinnik*, 515 N.Y.S.2d at 10 ("The point is that the letter of March 10, construed in light of the facts as alleged in the complaint, is not so indefinite as to raise an inference of non-finality so certain as to render the complaint dismissable prior to joinder of issue."). Standing alone, the emails on which the district court relied in dismissing Highland's breach of contract claim may suggest the absence of intent to be bound, but Highland's allegations regarding the binding effect of the December 3 phone conversation, the parties' agreement to abide by the LSTA's standard terms, Bank of America's failure to  seek inclusion of any non-industry, non-LSTA standard terms, and the meaning of the parties' "subject to" language under the LSTA standard terms renders the intent of the parties, at the very least, ambiguous. Without further evidence regarding the parties' interactions and industry custom and practice, it is not possible to definitively determine whether the parties intended to be bound by their oral agreement. Taking the facts in Highland's complaint as true, and viewing them in the light most favorable to Highland, *Bustos*, 599 F.3d at 461, Highland has

12

stated a plausible claim for relief against Bank of America for breach of contract, *Amacker*, 657 F.3d at 254. Thus, the district court erred in dismissing for failure to state a claim.

II.   Promissory Estoppel

"To establish a claim for promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise." *Sabre*, 944 N.Y.S.2d at 42 (quotation marks omitted). If the parties have a valid contract, then a claim for promissory estoppel cannot stand. *Susman v. Commerzbank Capital Mkts. Corp.*, 945 N.Y.S.2d 5, 8 (N.Y. App. Div. 2012).

The district court held that Highland had failed to state a claim for promissory estoppel because a clear and unambiguous promise was absent. *Highland Capital Mgmt., L.P.*, 2011 WL 5428779, at *8. Specifically, the district court found that "[n]either the parties' communications nor the LSTA Standard Terms include an express promise," and that, "[w]hile it is possible that in the context of the trade, the parties' communications coupled with the circumstances in which it was made could be a promise, any such promise is far from the clear and unambiguous type required to support a claim of promissory estoppel." *Id.* The court also held that the parties made clear that additional consents and documentation were required, and "New York courts have held that any alleged reliance by a plaintiff on a promise to enter an agreement is unreasonable if the promise is made subject to obtaining approval or execution of a written agreement memorializing the parties' agreement." *Id.* Highland's complaint alleged that Bank of America "promised to [Highland] that [Bank of America] would settle a transaction in accordance with the parties' telephonic and email

13

confirmations of the material terms of the trade," and Highland "reasonably and substantially relied on [Bank of America]'s promise to its detriment." Pl.'s Compl. ¶ 39.

The district court's dismissal was proper because Highland has not adequately pleaded reliance on Bank of America's promise, and we therefore need not reach the question of whether Highland adequately alleged a clear and unambiguous promise for the purposes of its promissory estoppel claim. Nowhere does the complaint elaborate how Highland relied on Bank of America's promise, nor are there any allegations that Highland was harmed by any actions it took based on that promise. The only harm Highland alleges it withstood is its loss of the "benefit of the increased value of the principal of the Regency Loan, as well as the interim interest payments made on the Regency Loan since the date of the trade." *Id*. ¶ 26. These damages are not the result of any reliance by Highland. Instead, they simply result from Bank of America's failure to follow through on the alleged agreement between the parties.

In order to state a valid claim for relief, a plaintiff must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Here, Highland has done nothing more than recite the elements of a promissory estoppel claim and assert that Bank of America's actions meet those requirements. Accordingly, the district court's dismissal of Highland's promissory estoppel claim, albeit on different grounds, was correct.

## CONCLUSION

For the foregoing reasons, we AFFIRM the dismissal of Plaintiff-Appellant Highland Capital Management, L.P.'s promissory estoppel claim. We REVERSE

the district court's dismissal of Highland's breach of contract claim, and remand for further proceedings consistent with this opinion.