CS Leveraged Loan Funding 2021 LLC v Bank of Am., N.A. (2026 NY Slip Op 00578)

CS Leveraged Loan Funding 2021 LLC v Bank of Am., N.A.

2026 NY Slip Op 00578

Decided on February 05, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 05, 2026

Before: Moulton, J.P., Friedman, Higgitt, Rosado, O'Neill Levy, JJ. 

Index No. 652151/23|Appeal No. 5743-5744|Case No. 2025-03038 2025-03896|

[*1]CS Leveraged Loan Funding 2021 LLC, et al., Plaintiffs/Counterclaim Defendants-Appellants,
vBank of America, N.A., Defendant/Counterclaim Plaintiff-Respondent. 

Susman Godfrey LLP, New York (Steven M. Shepard of counsel), for appellants.
Allen Overy Shearman Sterling US LLP, New York (Jeffrey J. Resetarits of counsel), for respondent.

Judgment, Supreme Court, New York County (Andrew Borrok, J.), entered June 16, 2025, awarding defendant/counterclaim plaintiff Bank of America (BofA) the total amount of $11,342,583.88, and bringing up for review an order, same court and Justice, entered April 17, 2017, which, to the extent appealed from as limited by the briefs, granted BofA's motion for summary judgment on its counterclaim for breach of contract as against plaintiffs/counterclaim defendants Black Diamond Capital Management (BDCM) and CS Leveraged Loan Funding 2021 LLC (CSLL) and on its counterclaim for promissory estoppel as against BDCM, unanimously reversed, on the law, with costs, the judgment vacated, the counterclaims for breach of contract and promissory estoppel as against BDCM dismissed, and the matter remanded for further proceedings on the counterclaim for breach of contract as against plaintiff CSLL. Appeal from aforementioned order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
In September 2021, a representative of BDCM contacted a representative of BofA to inquire about acquiring loans of a nonparty Crown Paper company on the secondary market on behalf of BDCM's managed funds. The two representatives discussed the parameters of the deal in two separate phone calls and ultimately reduced the basic terms of the deal in a September 29, 2021 online discussion via Bloomberg Chat. The trade was later allocated to CSLL, and a trade confirmation was issued in October 2021, with CSLL as buyer and principal and BofA as seller and principal. However, it later developed that BDCM was on Crown's "disqualified institution" (DQ) list, thus disqualifying it from owning Crown's loans. Therefore, a question arose as to whether CSLL was also a disqualified institution as a result of its affiliation with BDCM. As a result, BofA took the position that it was not permitted to settle the trade with CSLL. BofA did not countersign the trade confirmation until September 2022, and soon afterwards, BofA and the other company debtholders sold the Crown loans, which by that time had dramatically decreased in value, to a third party at approximately 35% of par.
Supreme Court erred in granting summary judgment to BofA on its breach of contract and promissory estoppel causes of action. The record presents issues of fact regarding the terms of the oral agreement between BDCM and BofA, as the testimony from BDCM and BofA's representatives differ sharply about exactly what those parties agreed to as part of BDCM's loan purchase beyond the pricing and amount. For example, although the representatives agreed in their testimony that BDCM had informed BofA that it might be on the DQ list, they dispute precisely what details were discussed and what was agreed to with respect to BDCM's inclusion on the list. Thus, the trade agreement on Bloomberg Chat contained essential ingredients of a binding agreement, but not all of them, and a factfinder must resolve which party's version of the agreement is more persuasive (see Ostad v Nehmadi, 167 AD3d 490, 491 [1st Dept 2018]; see also Highland Capital Mgt., L.P. v Bank of America, N A., 698 F3d 202, 208 [5th Cir 2012] [interpreting New York law]).
Furthermore, plaintiffs have raised material issues of fact regarding whether BofA was truly unable to settle the trade as contemplated after it learned that BDCM was on the DQ list. The operative credit agreement specifically provides that to be disqualified, an affiliated entity had to be reasonably recognizable from its name as an affiliate of a company on the DQ list; there is no dispute that the CSLL name is not "reasonably recognizable" as BDCM, and in fact is entirely distinct from BDCM. The credit agreement makes no reference to understanding or knowledge of affiliation, but only to name recognition. Similarly, under the circumstances presented, the record presents material issues of fact regarding whether BofA sold the loans in a "mutually agreeable alternative structure or other arrangement that affords the buyer and the seller the economic equivalent of the of the agreed-upon trade," as required by the Loan Syndications and Trading Association's standard terms and conditions. The parties also dispute whether, given the nine-month delay in settlement, the trade was effected "as soon as practicable" as required by the standard terms and conditions, especially considering the decline in the value of the loans in the interim. These are matters that cannot be resolved on summary judgment.
Supreme Court also erred in denying BDCM's motion for summary judgment dismissing the counterclaims as against it. As to the counterclaim for breach of contract, the record shows that after the initial oral agreement was reached, it was modified on consent to substitute CSLL into the trade for BDCM, superseding and extinguishing any prior trade agreement that listed BDCM as the buyer (see Northville Indus. Corp. v Fort Neck Oil Terms. Corp., 100 AD2d 865, 867 [2d Dept 1984], affd 64 NY2d 930 [1985]; see also UBS AG v Highland Capital Mgt. L.P., 29 Misc 3d 1230[A], 2010 NY Slip Op 52098[U], *2-3 [Sup Ct, NY County 2010]). As to the counterclaim for promissory estoppel, there exists a potentially valid and enforceable contract between CSLL and BofA governing the subject matter, thus precluding recovery under a promissory estoppel cause of action (see Coleman v Kirby, 201 AD3d 402, 403 [1st Dept 2022]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 5, 2026